GIBBS & HUDSON, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 74683.  Promulgated December 23, 1936.

*H. B. Jones, Esq.*, for the petitioner.
*Elden McFarland, Esq.*, for the respondent.

OPINION.

STERNHAGEN: 1. The Commissioner, in the notice of deficiency, said, as to 1930:

    1. Gain from sale of apartment understated_____ $142,031.55

and explained this item thus:

Profit realized in 1930 is $155,639.21, whereas the profit reported on the 1930 return was $13,607.76; the difference, or $142,031.55, is included in the adjusted income.

This adjustment by the Commissioner is not broken down in the deficiency notice, but it seems to embrace several adjustments which must be separately considered.

(a) In computing the gain from the sale of the Lowell apartment building, the petitioner includes, and the Commissioner refuses to include, in cost the $41,593 paid to Gibbs and Hudson, pursuant to the corporate resolution of June 15, 1928, for services performed. The services were entirely related to the construction of the building, being the architectural plans and specifications, the engineering and supervision of construction, the purchasing of materials, and the securing of loans and signing of the mortgage. The general duties of Gibbs and Hudson as officers of the corporation were not covered by this payment or the resolution authorizing it. The fact that these individuals were officers and equal shareholders, and their compensation for architectural and construction services were also equal, is a circumstance to be considered but not sufficient to establish the character of the payment of $41,593 as other than part of the cost of the building. The Commissioner's exclusion of this amount from cost was error, *Federal Plate Glass Co.*, 6 B. T. A. 351, 357; *Grelck Condensed Buttermilk Co.*, 7 B. T. A. 79, 83; cf. *New Jersey Bergen Square Realty Corporation*, 22 B. T. A. 1324; *Tom (Fayette T.) Moore*, 19 B. T. A. 140.

(b) The petitioner now claims that the cost of The Lowell should include the $2,250 paid to Logan in 1932 in settlement of his claim to a "bonus" or share of the profit. The contention is not supported by the evidence. Neither the evidence as to the alleged promise to Logan in 1928 nor that as to the settlement in 1932 is sufficient to establish a liability in 1930 or that the settlement made in 1932 was properly part of the cost of the building. And there is no more support for a deduction in 1930 as an accrued or sustained expense. The petitioner's contention is not sustained. Cf. *Lucas* v. *American Code Co.*, 280 U. S. 445; *J. N. Pharr & Sons, Ltd.* v. *Commissioner*, 56 Fed. (2d) 832; *Clark Dredging Co.* v. *Commissioner*, 63 Fed. (2d) 527; *Pierce Oil Corporation*, 32 B. T. A. 403, 418; *Leichner & Jordan Co.*, 4 B. T. A. 133.

(c) Both parties are now agreed that the sale of the Lowell building was properly treated by the Commissioner as an installment sale under Revenue Act of 1928, section 44 (b), since in no event were the initial payments more than 40 percent of the selling price, the amount of the mortgage ($390,000) being treated as part of the selling price but not included in the initial payments, *Burnet* v. *S. & L. Building Corporation*, 288 U. S. 406.[1] The controversy turns upon the proper treatment of the assigned right to certain future installments of the

---

[1] Paul and Mertens, Law of Federal Income Tax, §12.17.

General Fruit Corporation's note, the petitioner insisting that they may not be regarded as part of the initial payment, first, because they were in escrow and contingent upon the payment by the purchaser of his $50,000 note, and, if not for that reason, then because they were wholly without fair market value.

It has been held that when an escrow stands in the way of receipt by a vendor of his sale price, he may not be taxed as if he received the price directly. *Preston R. Bassett*, 33 B. T. A. 182, 190 (on review, C. C. A., 2d Cir.) ; *Rebecca J. Murray*, 28 B. T. A. 624. The petitioner, therefore, did not receive the escrow in 1930, and it may not be treated as part of the initial payment in that year.

But, although the assigned installments of the Fruit Co.'s note are no part of the initial payment, they are properly part of the sale price, and serve to measure the total profit to be realized from the entire installment sale of the building and in turn the proportionate part of the initial payment which is to be taxed in 1930 as gain. It is necessary for this purpose to determine their fair market value on April 15, 1930. The sale was on that date in all substantial respects complete, even though the deed was not delivered to the purchaser in 1930, *Union Pacific Railroad Co.*, 32 B. T. A. 383, 390; affd., 86 Fed. (2d) 637. It can not be held, as petitioner urges, that Youell had only an option, or that petitioner's right to the assigned installments of the Fruit Co.'s note was so contingent as not to be a present part of the price.

The question is their value on April 15, 1930, when they became part of the total price. Upon this there is substantial evidence of various qualities and weight. As shown in the findings, the installments were of a face value, when payable in the future, aggregating $191,129.87, and were, on April 15, 1930, of a fair market value of $48,079.13. This finding is the result of a full consideration of all the evidence, and is the amount which should be included as the part of the total sale price represented by the Fruit Co.'s note. The other factors of computation of the total sale price and initial payment are not in dispute. This sale price should be applied against a cost which includes the $41,593 paid to Gibbs and Hudson and excludes the $2,250 paid to Logan.

2. The Commissioner reduced the deduction for salaries of Gibbs and Hudson from $30,000, the amount actually authorized in 1930, to $12,000, the amount which the Commissioner regarded as the maximum reasonable allowance for the services performed. The evidence shows what the services were and a reasonable measure of their value. Considering all the evidence results in the finding that has been made that the salaries of $30,000 were authorized and accrued in 1930 and

were no more than a reasonable allowance for the services performed. The amount is, therefore, properly a part of ordinary and necessary expenses and properly deductible. The respondent's determination as to this is reversed.

3. The petitioner included no interest on Youell's note for $50,000 in its gross income for 1930. The Commissioner computed the interest at 7 percent from April 15 to December 31, 1930, and added the amount, $2,429.17, to gross income in determining the deficiency. This was correct. The petitioner's tax was computed on the accrual basis and the interest had clearly accrued. There is no force in the possibility that Youell might in fact have defaulted or that the maturity of the note was postponed until 1931. In either event the interest was a contractual obligation which accrued in 1930. This item of the respondent's determination is sustained.

4. The Commissioner disallowed the deduction of $300 out of $900 legal fees paid in 1930, because he thought the amount was a retainer for 1931. The evidence shows that the Commissioner was mistaken and that the attorney's employment was discontinued in 1930. The character or amount of the payment is not otherwise questioned. The Commissioner's disallowance is reversed.

5. The Commissioner imposed a penalty of 5 percent under the Revenue Act of 1928, section 293 (a), and this is proper "if any part of the deficiency is due to negligence or intentional disregard of rules and regulations." Unlike a fraud penalty, the burden is upon the taxpayer to prove the 5 percent penalty to have been imposed in error. Regulations 74, article 353, clearly requires that the total selling price be used in the computation of the total profit and as a means of computing the amount of profit in the initial payment of the taxable year. There was no good reason for the petitioner to omit entirely the Fruit Co.'s notes or the Youell $50,000 note from the total selling price. Nothing in the evidence justifies the omission, and it was in plain disregard of the clear rule of the regulation. That it was intentional is inescapable. If, however, there were any doubt about the intent, it would still be necessary to attribute the omission to negligence. The penalty of 5 percent was properly applied, although of course the amount will be modified in accordance with the modified deficiency.

*Judgment will be entered under Rule 50.*