John F. Gouldman, Jr. v. Commissioner.
Gouldman v. Commissioner
Docket No. 11739.
United States Tax Court
1947 Tax Ct. Memo LEXIS 183; 6 T.C.M. (CCH) 657; T.C.M. (RIA) 47159; June 18, 1947
*183 Petitioner transferred to his son certain shares of stock in a transaction purporting to be a sale. Under the facts and circumstances, held, that the transaction was not bona fide and the dividends paid on the stock after the transfer are taxable income to petitioner. R. Carter Scott, Jr., Esq., Travelers Bldg., Richmond, Va., and Ray R. Shepherd, C.P.A., State Planters Bank Bldg., Richmond, Va., for the petitioner. George J. LeBlanc, Esq., for the respondent. HILL Memorandum Findings of Fact and Opinion HILL, Judge: Respondent determined a deficiency in petitioner's income tax for 1941 in the amount of $2,962.93. Respondent further added a five per cent penalty of $148.15 under section 293 (a) of the Internal Revenue Code. The questions are, (1) whether certain dividends paid in 1941 are taxable to petitioner or to his son, and (2) whether petitioner is subject to a penalty under section 293 (a) for failing to report certain items of income. Petitioner filed his return with the collector of internal revenue at Richmond, Virginia. Findings of Fact Petitioner is an individual, age 65 at the time of the hearing and residing in Fredericksburg, *184 Virginia. During 1941 petitioner was president and a director of the Bank of Lancaster at Kilmarnock, Virginia, hereinafter referred to as the Bank, and owned, in conjunction with his immediate family, approximately 1,780 of the Bank's 5,500 outstanding shares of stock. In May or June 1941 petitioner and W. C. Chilton organized the Indian Creek Company, Inc., hereinafter referred to as the New Company. Petitioner and Chilton each contributed $5,000 capital to the New Company. Petitioner borrowed the $5,000 he contributed from the Bank and gave his note therefor. This note was secured by 50 shares of $100 par stock of the New Company. Petitioner had acquired this stock as a result of his capital contribution. Chilton was issued 49 shares and his son one share. These 100 shares issued to petitioner and the Chiltons constituted the outstanding stock of the New Company during 1941. The New Company was organized to engage in the fish business. The New Company's $10,000 operating capital was for the purpose of renting boats and other equipment from the Kilmarnock Fish & Guano Company, hereinafter referred to as the Old Company. The Old Company was indebted to the Bank for $5,000 evidenced *185 by a note considered in 1941 to be practically worthless. The Old Company was owned by the Bank and Chilton. Petitioner and Chilton organized the New Company in the hope of making a profit for themselves and also to enable the Old Company to pay its debt to the Bank. The fish business the New Company was engaged in consisted of catching fish and processing them into oil and scrap. It is a financially hazardous business. The fishing season runs from June 1st until late November or early December, depending on the weather. The 1941 season was a profitable one. The 1941 sales of oil and scrap from June to December, inclusive, were as follows: Tons -
Gallons -
Sales
Date
Scrap
Oil
Price
June 30
100
$ 5,202.28
July 21
100
5,319.70
July 28
200
10,679.48
July 28
7,794
3,702.15
Aug. 7
104
5,629.47
Aug. 7
8,057
3,827.08
Aug. 18
100
5,560.94
Aug. 26
2
130.05
Aug. 27
8,021
4,211.03
Aug. 30
100
6,077.37
Aug. 30
16,088
8,044.00
Sept. 19
100
5,547.53
Sept. 30
54
3,233.71
Sept. 30
16,290
8,959.50
Oct. 9
99
5,480.80
Oct. 17
50
2,964.43
Oct. 20
15,671
8,779.67
Oct. 31
152
9,170.56
Nov. 12
8,071.3
4,842.78
Nov. 30
113
6,641.85
Dec. 17
94
5,584.20
Dec. 19
14,075
8,163.50
Totals
1,368
94,067.3
$127,752.08
*186 On August 13, 1941, 40 shares of petitioner's stock in the New Company were transferred on the books to petitioner's son, J. Garnett Gouldman, hereinafter referred to as Garnett, and a new certificate was issued accordingly. Garnett concurrently gave the Bank his note for $4,000 secured by such 40 shares. The Bank accepted Garnett's note in part payment of petitioner's debt to it of $5,000. Petitioner's remaining unpaid balance of $1,000 due the Bank was evidenced by a new note executed by petitioner and secured by 10 shares of stock in the New Company. Petitioner paid this note in June, 1942. The alleged sale of the stock to Garnett was initiated by petitioner who suggested the deal to Garnett as a good investment. The latter made no investigation as to the value of the stock or as to the basis of petitioner's recommendation that it was a good investment. He acted solely upon petitioner's suggestion and recommendation. The whole arrangement of the deal was made by petitioner, including the arrangement with the bank. No cash changed hands in connection with the transaction of August 13, 1941. The acceptance by the bank of Garnett's note was approved by petitioner in his capacity *187 as president and director of the Bank. On December 9, 1941, the New Company paid a 100 per cent dividend on its stock. Garnett received a dividend check of $4,000 which he deposited in his checking account at the Farmers & Merchants State Bank, of which petitioner was then president and where he, Garnett, was employed. Prior to depositing this check Garnett's account was overdrawn $51.50. On the same day Garnett made a check to petitioner for $3,500. Garnett reported the $4,000 as income for 1941. This is the item involved in the present controversy. On January 17, 1942, the New Company declared a 50 per cent dividend. Garnett received a dividend check for $2,000, deposited it in his bank account and drew a check in petitioner's favor for $1,750 the same day. Prior to the deposit Garnett's account was overdrawn $75.75. Petitioner executed two notes in the respective face amounts of $3,500 and $1,750 in favor of his son on account of the two checks for the same amounts drawn by the son in favor of petitioner on December 9, 1941 and January 17, 1942, mentioned above. These two notes were secured respectively by 200 and 100 shares of Bank stock. On February 16, 1946, petitioner *188 sold a block of his Bank stock and from the proceeds paid his son $5,250, representing the aggregate face amount of the two notes for $3,500 and $1,750. On June 12, 1943, petitioner borrowed $1,500 from his son which amount was secured by 12 shares of Bank stock. On October 1, 1945, petitioner borrowed $2,100 from his son which amount was secured by 2,000 shares of Carco stock. On April 3, 1946, petitioner borrowed $1,500 from his son which amount was secured by 5 shares of Lancaster Broadcasting Co. stock. At the time of the hearing petitioner still owed his son the $5,100 representing the three loans just mentioned. Garnett was not made a director or officer of the corporation. He did not attend the stockholders' meeting at which it was decided to liquidate the corporation. Petitioner voted Garnett's stock at such meeting. Garnett had no voice in the decision to liquidate the corporation. On June 19, 1942, the New Company made a liquidating distribution on acount of which Garnett was issued a check for $3,242.06. Petitioner, without prior authorization or notification, signed Garnett's name to this check and signed his, petitioner's, own name underneath and applied the check *189 in partial payment of Garnett's indebtedness of $4,000 to the Bank. The unpaid balance of Garnett's debt to the Bank in the amount of $784.60 was paid by a draft drawn by the Bank on Garnett at petitioner's instance. Petitioner did not return as his income for 1941 the $4,000 in dividends paid on the 40 shares of stock in that year. Respondent in his deficiency notice stated: "It is held that the $4,000.00 dividend paid in 1941 on 40 shares of stock of Indian Creek Company, Inc., alleged to be the property of your son, J. Garnett Gouldman, is taxable to you. * * *" During 1941 petitioner sold certain lots in a subdivision owned by him and realized a profit. He did not report this profit in his 1941 return. He was under the impression that until he had recovered his investment on the entire subdivision no taxable income was realized. Failure to report this item of profit as income was due to negligence. During 1941 petitioner sold his interest in a bakery. Petitioner received in part payment therefor real estate. Petitioner did not include the value of this real estate in computing his profit on the sale for tax purposes. Petitioner was under the impression that until such real *190 estate was sold by him for cash it did not enter the profit computation for tax purposes. Failure to report this item of profit as income was due to negligence. Petitioner now admits that he should have recognized these items for tax purposes. The deficiency herein is in part due to petitioner's negligence in failing to include the foregoing two items in his income. Respondent has imposed a penalty under section 293(a) for petitioner's failure to report them. Opinion Petitioner contends that the dividends in question are not taxable to him because the stock on which they were paid had previously been sold by him to his son. Petitioner, in other words, interprets the transaction wherein Garnett's note for $4,000 was applied to petitioner's debt of $5,000 to the Bank, and wherein 40 shares of stock were transferred from petitioner to Garnett, as a sale of such stock. Respondent denies the bona fides of the claimed sale. We agree with respondent. On the formal level petitioner can consistently explain the transactions here involved in terms of a sale of stock. Stock was transferred from petitioner to his son. The sales price was represented by the substitution of the son's note *191 for $4,000 for petitioner's note in the same amount. The ordinary dividends were received by the son and deposited in his bank account. By separate transactions the son loaned a substantial part of these dividends to petitioner but the loans were evidenced by petitioner's secured notes and were paid off in 1946 by petitioner's check. The liquidating dividend was not directly received by the son but was applied to his indebtedness to the Bank. Thus, the entire dealings between petitioner and his son with respect to the stock can be consistently explained formally in terms of sale. Mere formalities unaccompanied by substance will not effect desired tax consequences. Here we find the substance of a bona fide arm's length sale lacking. True, there was a technical transfer of stock from petitioner to his son but petitioner retained the voting control represented by such stock and the stock remained pledged as collateral and thus, as a practical matter, beyond the son's control during the period of his technical ownership. True, the son technically paid a price for the stock transferred but actually he was without means to pay cash and his credit was accepted as a substitute by petitioner's *192 arrangement at the Bank. A substantial part of the son's debt on account of such purchase price was paid by the liquidating dividend on the pledged stock. This payment was applied by petitioner without the son's authorization. True, also, the ordinary dividends paid on the stock were received by the son but almost instantly the beneficial use of most of the funds they represented passed to petitioner under loans. It is technically true that this loan was repaid by petitioner in 1946 but it strikes us as more than coincidental that petitioner thus repaid his son $5,250 in 1946 and at the time of the hearing was still indebted to his son for $5,100 on other loans. In other words, out of the first dividend the son retained $500 and loaned petitioner $3,500. Out of the second dividend the son retained $250 and loaned petitioner $1,750. The liquidating dividend went entirely to pay the son's debt to the Bank. The full amount of $5,250 loaned by the son to petitioner was repaid but $5,100 has otherwise been reborrowed. Under all these circumstances we find it impossible to conclude as a matter of substance as distinguished from form that a bona fide arm's length sale was consummated between *193 father and son or that petitioner was availing himself of more than a filial pocketbook device. For these reasons, we hold that respondent correctly attributed to petitioner for income tax purposes the dividends in question. With respect to the penalty, section 293 (a), Internal Revenue Code, applies where "any deficiency is due to negligence * * * but without intent to defraud." Unlike the fraud penalty, the burden is upon the taxpayer to prove the five per cent penalty was imposed in error. Gibbs & Hudson, Inc., 35 B.T.A. 205. Here petitioner failed to report profits from the sale of lots in a subdivision and also failed properly to treat the value of property received in part payment for his interest in a business. We believe petitioner acted honestly and without intent to defraud but we think he was negligent. He now readily admits his original error. It seems to us this original error could easily have been avoided had the petitioner taken only reasonable steps to determine the tax significance of the transaction involved. To be free from negligence, it seems to us, a taxpayer must do more than guess and hope his tax treatment is correct *194 in situations where the proper treatment is not obscure or difficult of ascertainment. We hold respondent correctly imposed the penalty. Decision will be entered for respondent.