Sheldon Rogers v. Commissioner.
Rogers v. Commissioner
Docket No. 52613.
United States Tax Court
T.C. Memo 1956-171; 1956 Tax Ct. Memo LEXIS 121; 15 T.C.M. (CCH) 890; T.C.M. (RIA) 56171; July 23, 1956
*121 Held: 1. That respondent's use of the bank deposit method in determining petitioner's income was justified and was not arbitary. 2. That because of the application of the provisions of section 275(c) of the Internal Revenue Code of 1939, the defense of limitations (raised only in respect of the year 1949) does not bar assessment. 3. That petitioner has omitted taxable income from his returns for each of the years 1949, 1950 and 1951. Amounts of omissions determined. 4. That petitioner failed to sustain the burden of proving error in respondent's disallowance of a claimed partnership loss for the year 1950. 5. That because of petitioner's failure to sustain his burden of proof, additions to tax are applicable for each of the years 1949, 1950 and 1951, under the provisions of sections 293(a), 294(d)(1)(A), and 294(d)(2) of the Code. Maurice Weinstein, Esq., 623 North 2nd Street, Milwaukee, Wis., for the petitioner. David H. Nelson, Esq., for the respondent. FISHER
Memorandum Findings of Fact and Opinion Respondent determined deficiencies and additions to tax for the years 1949, 1950 and 1951 as follows: Additions to Tax
Tax
Year
Deficiency
293(a)
294(d)(1)(A)
294(d)(2)
1949
$ 9,984.11
$ 499.21
$1,014.80
$ 608.89
1950
24,351.89
1,217.59
2,504.88
1,502.93
1951
6,359.22
317.96
793.52
476.11
The issues presented are as follows: (a) whether respondent's use of the bank deposit method was justified; (b) whether assessment for the year 1949 was barred by limitations; (c) whether, and to what extent, petitioner omitted taxable income from his returns for each of the years 1949, 1950 and 1951; (d) whether petitioner met the burden of proof of establishing a partnership loss for the year 1950; and (e) whether petitioner met the burden of proving error in respondent's determination of additions to tax for the years in question under sections 293(a), *123 294(d)(1)(A) and 294(d)(2) of the Code. Findings of Fact Some of the facts are stipulated and to the extent so stipulated are incorporated herein by reference. Petitioner is an individual who, during the years 1949, 1950 and 1951 involved, lived in Milwaukee, Wisconsin. His income tax returns were timely filed for said years with the then collector of internal revenue at Milwaukee. Petitioner is now (and has been, since February of 1954) living in Mexico, where he is studying medicine. His wife is a nurse. The petitioner attended grade school, junior high school and high school and went through college and also took some extra work at vocational school in order to obtain enough credits to enter medical school. In September of 1942, petitioner enlisted in the Army Air Force and was discharged for medical reasons in 1944, and thereafter he worked as a civilian employee for the Navy Department, Bureau of Ships, in the Sixth Corps Area in Milwaukee, Wisconsin, until some time at the end of 1945, when the program was suspended. During the years 1945, 1946, 1947 and 1948, petitioner worked as a salesman for various firms. During the years involved here, petitioner derived income *124 as a sports broker, handling and placing bets for others with bookmakers and professional bettors. He was also, during 1949, engaged in the concession business, working at state fairs, carnivals and sport shows. In addition, at times during the years in question, he went to Florida and worked at race tracks. Petitioner made his contacts for placing bets in several ways. He became acquainted with people at the fairs and carnivals who wanted to bet but didn't know whom to bet with. He also found out what people were buying racing forms at newsstands. Many of these were professional men who did not want to become directly involved. There were also salesmen who stopped at the hotel where he lived for a time. During part of the period in question, an investigation of gambling was going on in Milwaukee, and bettors were careful. Petitioner would take the bets and place them with bookmakers, some in Milwaukee and some in Chicago. The wagers were on sports events. The petitioner regularly called or contacted these persons and they would deposit with him funds to be bet on certain events and at certain odds. It was understood that he would try to place these bets at these odds. If he were *125 able to place them at more favorable odds, he would retain the extras. However, if he were unable to obtain better odds, he would place them at the odds that his clients requested. There were many instances when his clients upon winning a bet, and being in a jovial mood, would give him a tip for his services. Petitioner maintained a checking account at the City Bank and Trust Company where he deposited some of the funds representing clients' money and bets collected, from which he also made some disbursements to and for his clients. He often kept small wagers in his pocket. As to other bets, if the bookmaker with whom he expected to do business was close by, he would go direct to the bookmaker and give him the money. In 1949, petitioner deposited $26,518.98 in his checking account in the City Bank and $1,000 in a savings account at First Wisconsin National Bank. Of the deposits to his checking account, $13,458.75 was in cash, and $13,060.23 was in checks. The deposit to the savings account was made in cash on December 2, 1949. In addition, petitioner received checks in 1949 totaling $1,395 which he did not deposit in his bank account. The foregoing amounts total $28,913.98. The *126 portion thereof which exceeded $1,755.05 (adjusted gross income disclosed on the 1949 return) was added to petitioner's income by respondent in determing the deficiency. No deductions were allowed for pay-outs or transfer items. Petitioner's withdrawals from his checking account in 1949 totaled $26,120.09. His balance in this account at the beginning of the year was $900.18, and at the end of the year was $1,299.07. In 1950, petitioner deposited $46,194.77 in his checking account and $1,000 in his savings account. Of the deposit in the checking account, $29,317 was in cash and $16,877.77 in checks. In addition, petitioner received during that year checks totaling $4,870.35 which he did not deposit in his bank account. The total of the foregoing amounts ($52,065.12) was determined by respondent to be petitioner's total income for the year. Respondent deducted therefrom $5,700 which petitioner reported in his return as "sports broker" and the resultant amount of $46,365.12 was used as the base figure in determining adjustments to gross income. Respondent also disallowed a partnership loss claimed on the return in the amount of $1,376.58. No deductions were allowed by pay-outs or transfer *127 items. Petitioner's withdrawals from his checking account in 1950 totaled $46,240.42. His year-end balance in this account was $1,253.42. In 1951, petitioner deposited $19,200 in his checking account, of which $10,376 was in cash and $8,824 by check. He also received during that year $3,346 in checks which he did not deposit. The foregoing amounts total $22,546. The portion of this amount which exceeded the $8,000 of business income reported by petitioner in his 1951 return ($14,546) was added to petitioner's income by respondent in determing the deficiency. No deductions were allowed for pay-outs or transfer items. Petitioner's withdrawals from his checking account in 1950 totaled $20,375.45 and his year-end balance in said account was $77.97. Deposits were made by petitioner in his checking account only in the five months of January, February, March, October and November of 1951. In 1950, deposits were made in all months except May. In 1949, deposits were made in all months. Petitioner did not at any time for any of the years in question file a declaration of estimated tax, or make payments of estimated tax. The amounts included by petitioner in his returns for each of the *128 years in question were estimates. His alleged basis for calculating such estimates was to take $65 a week as living expenses and add to the total thereof what he thought he had saved each year over and above such living expenses. In 1950, petitioner traded in a 1940 Chevrolet, acquiring a new Plymouth. In 1950 or 1951, he traded in the Plymouth and acquired a new Buick Special. Petitioner never kept any records in the sense of formal books or a bookkeeping system. He kept scraps of paper on which he made notations. On Saturdays, he would "figure things out," pay what was due, and throw the slips away. At the time of the investigation by the revenue agent, he had no cancelled checks. Petitioner had the use of a safe deposit box in the City Bank and Trust Company in at least one of the years in question. He went into the box once a week. He kept both checks and cash in the box. Petitioner had two telephones at 912 E. Ogden Street which he used in his business. In general, when a client phoned in his bet, the client would hold one line while petitioner called the bookmaker on the other line to get the odds. Some of the calls were to bookmakers in Chicago. The revenue agents *129 requested a net worth statement, but petitioner refused to furnish it. The revenue agents were unable to prepare one on the basis of their investigation because petitioner had few assets of record and there was no way to establish cash on hand. The agents, however, found that petitioner owned some stocks of a value of a few thousand dollars. On petitioner's return for 1949, the only income reported was shown as "other" income on line 5 of page 1 in the amount of $1,755.05. On Schedule C, page 2 (profit or loss from business), the nature of the business was stated to be "concessions." Total receipts from this business were listed at $2,497.98 from which expenses (automobile) of $742.93 were deducted, leaving a net profit of $1,755.05. In petitioner's tax return for 1950, his income was reported on line 2 of page 1, in the "Total Wages" column as $5,700. Opposite this figure, in the columns provided for the employer's name and address, petitioner wrote "Sports Broker." Schedule C was not filled out and did not accompany the return. Schedule G, line 1 (Income from partnerships, estates, etc.) showed a deficit item of $1,376.58 which he used as a deduction. In petitioner's income *130 tax return for 1951, adjusted gross income reported was $8,000 on lines 3 and 4 of page 1. This was derived from Schedule C attached to the return. Thereon the nature of his business was stated to be "Commission Broker" with the same address as the taxpayer's residence. Said Schedule C gave the figure of $8,000 as gross and net profit as well as total receipts from business. Upon contacting petitioner, revenue agents asked for his books and records. The same request was later made to his counsel. None were furnished. Thereafter, the agents began checking local banks for an account in petitioner's name and discovered the checking account heretofore mentioned at City Bank and Trust Company. They went to the bank and began the task of trying to trace petitioner's deposits and withdrawals. Starting with the account ledger cards, it was possible to check out the deposits in many instances by tracing checks listed on the deposit slips to the bank upon which drawn, and from there the name of the drawer. The agents checked out as many items as they could but some were impossible to trace. The bank neither photostated nor microfilmed customers' checks and the agents were unable to trace *131 withdrawals from bank records. The agents made efforts to discover some pattern in the withdrawals but none developed. They contacted parties from whom petitioner had received money to see if money had been paid by petitioner to these parties but they were not successful and the effort led to nothing conclusive. The statutory notice of deficiency was sent to petitioner more than three but less than five years after petitioner's income tax return for the year 1949 was filed. Ultimate facts are found as follows: Petitioner omitted from his income tax return for the year 1949 gross income properly includible therein in excess of 25 per centum of $2,497.98, the amount of gross income stated in said return. Petitioner omitted from his income tax returns for the years 1949, 1950 and 1951, taxable income in the respective amounts of $4,730.52; $7,316.28; and $5,527.60. Opinion I. Bank Deposit Method FISHER, Judge: Respondent determined the deficiencies in this case by treating as income the amount of bank deposits and certain undeposited cash received by petitioner during the years in question. Petitioner argues that the use of this method, without allowing any eliminations *132 or deductions for transfer items or pay-outs, is arbitrary and must be rejected upon the authority of Helvering v. Taylor, 293 U.S. 507. We do not agree with petitioner's contention. It is clear from the record that petitioner's main source of income during the years in question was that of a betting broker or go-between who took bets from various bettors (who did not want or at least did not have direct contacts with bookmakers or professional gamblers) and placed them with bookmakers. Petitioner had no books or system for keeping records of his income. He made notes on scraps of paper, made his calculations on Saturdays, paid what was required, and destroyed the notes. At the time of the investigation, he had no cancelled checks or other records from which his income could be calculated or tested. The amounts of income stated on his tax returns were admittedly estimated. The only tangible available information of any substance consisted of bank statements showing deposits and withdrawals. He admittedly used the bank account in question in connection with his business as a betting broker. Under similar circumstances, it has been held repeatedly that the respondent *133 is justified in treating unidentified deposits as income and that the onus is upon the taxpayer to establish what, if any amounts are not attributable to items of income and what deductions are allowable. The taxpayer is placed in such position by his own failure to keep records and he may not profit by his own default in this respect or shift his responsibility to the respondent. The applicable principle is clearly expressed in Doll v. Glenn (C.A. 6, 1956) 231 Fed. (2d) 186, in which the Court of Appeals said, in part (p. 188): "In the absence of the books and records of the Doll Lumber Company, the Commissioner was justified in treating the deposits in the bank account of H. A. Doll as gross income with the burden resting upon the taxpayer to show what amounts, if any, were non-taxable income, and what deductions, if any, should be properly credited against it. Hoefle v. Commissioner, 114 Fed. (2d) 713, C.A. 6th; Hague Estate v. Commissioner, 132 Fed. (2d) 775, 777-778, C.A. 2nd, cert. denied 318 U.S. 787; Goe v. Commissioner, 198 Fed. (2d) 851, C.A. 3rd, cert. denied 344 U.S. 897; Leonard B. Willits, 36 B.T.A. 294, 297; *134 * * *" We think it is clear from the foregoing that under the circumstances of the instant case the use of the bank deposit method as here applied was not arbitrary, but was justified and was the only practical approach available to respondent in view of petitioner's failure to keep books. Helvering v. Taylor, supra, is not applicable to the facts before us, even though we hold infra, upon the whole record that the actual determinations of the respondent were excessive. II. Limitations - 1949 With respect to the year 1949, the statutory notice of deficiency was transmitted to petitioner more than three but less than five years after the return for that year was filed. No allegation of fraud was made. Accordingly, assessment for 1949 was barred by limitations unless petitioner omitted from his return for that year gross income properly includible therein in excess of 25 per centum of the amount of gross income stated in said return. Sec. 275(a) and (c), Internal Revenue Code. On this issue, the respondent has the burden of proof. Lois Seltzer, 21 T.C. 398 (1953); Ralph Romine, 25 T.C. 859 (1956). The amount of gross income (which was *135 the same as the amount of gross receipts) stated in the 1949 return was $2,497.98. Twenty-five per centum of this amount is $624.50. The total receipts shown on the return were attributed thereon in Schedule C to petitioner's concession business. No receipts from his business as betting broker (nor from any source other than his concession business in the amount of $2,497.98) were included in the return. The record establishes that petitioner, in 1949, deposited $26,518.98 in his checking account and $1,000 in his savings account, and in addition received checks totaling $1,395 which he did not deposit. Petitioner admits that his checking account was used in connection with his business as a betting broker. We think that the foregoing circumstances, coupled with the absence of books and records or other adequate explanation on the part of petitioner, and the omission from his return of any receipts from his business as betting broker, give rise to the inference that at least a substantial part of the total of the above amounts ($28,913.98) represented gross income. Petitioner took the stand as a witness on his own behalf. He made no claim that any part of the $28,913.98 arose *136 from gifts, inheritance, money borrowed, or any like source which would not give rise to income. He did claim, however, that much of the funds represented money passing through him as a conduit from bettor to bookmaker and vice versa. From the nature of his business, we have no doubt that some of the funds did consist of transfer items and pay-outs (see discussion infra) but petitioner was unable to give any indication of the amounts thereof. In petitioner's reply brief, an attempt was made to point out matching items of deposits and withdrawals as indicative of items which did not represent income, but the total of these for 1949 was only $4,280.56 which tends rather to reinforce the inference that a substantial part of the deposits and undeposited checks represented gross income. Petitioner's activities as a betting broker were obviously substantial in 1949. He does not suggest that his undertaking was unprofitable in that year (or in the other two years involved). He does not explain why his return for 1949 failed to include any receipts from that source. If he realized gross income of so little as $15 per week from his business as betting broker, the amount unreported would *137 exceed 25 per centum of the gross income reported. Stated otherwise, if a mere 2.2 per cent of the total of $28,913.98 deposited or received without deposit represented gross income from his business as betting broker, the provisions of section 275(c) are met. Upon consideration of all of the facts, we conclude that petitioner omitted from his 1949 return gross income in excess of 25 per centum of the amount of gross income reported. We hold accordingly, that assessment for the year 1949 is not barred by the statute of limitations. III. Understatements of Taxable Income Respondent determined deficiencies by treating as income for each of the years in question the full amount of the deposits made by petitioner in his checking and savings accounts plus checks received in each of said years which were not deposited in made for transfer items or pay-outs because of lack of substantiation of any such items. Respondent's determinations of deficiencies for each of the years is prima facie correct, and the burden is upon petitioner to establish error in such determinations. Upon consideration of the whole record, we think it obvious that a substantial part of the deposits and *138 checks received without deposit must have been transfer items and pay-outs. This is a necessary inference from the nature of petitioner's business as betting broker, and the manner in which he operated it. The difficulty of decision arises from the fact that the burden is on petitioner, and that, except for a few relatively inconsequential items matching deposits and withdrawals summarized in his reply brief, he has failed to substantiate any of the items as transfers, pay-outs, or otherwise non-income items. Despite petitioner's failure to present specific proof, we think that, upon the record as a whole, he presented enough evidence as to the conduct of his business and the passage of money through his accounts to demonstrate that acceptance of respondent's determination would produce a harsh and unrealistic result. At the same time, especially in view of the presumptive correctness of respondent's determination, it is obvious that we cannot accept petitioner's position that his returns, which admittedly included only estimates of his income, were correct. On the record, we are left largely to our own resources with few landmarks to point the way. We think the case calls for *139 the application of the principles of Cohan v. Commissioner (C.A. 2, 1930) 39 Fed. (2d) 540, but even the broad areas of judgment there implied leave us little in the nature of a guide to the solution of the issue here presented. We have noted, of course, that the balance in petitioner's checking account at the beginning of 1949 and the year-end balances in 1949, 1950 and 1951 varied little. The fact that the total withdrawals over the three years slightly exceeded the beginning balance plus deposits is in no sense decisive, however, because petitioner furnished no information concerning the amount of his cash accumulations although he admitted that he had cash in his safe deposit box. We think, however, that the amounts of his bank deposits and undeposited checks (stipulated by the parties and set forth in our Findings) furnish some clue to the size and activity of his enterprise as betting broker, and, when taken into consideration in the light of the nature of his business and the manner in which he operated, afford us a basis for applying the Cohan rule. We infer from the entire record that there is no reasonable probability that his gross income exceeded 25 per *140 cent of the total deposits and undeposited checks for the years 1949 and 1950, respectively. In our Findings of Fact, we have made ultimate findings of specific amounts of income omitted from petitioner's returns. The omission so found for each of said years represent 25 per cent of the total deposits and undeposited checks less the total receipts actually reported by petitioner in his returns for said years. Broadly speaking, we have applied the same pattern to the year 1951. In that year, however, there was an additional problem arising from the fact that bank deposits were made in only five months of the year, although there is no evidence that petitioner materially curtailed his activities in the remaining seven months. Keeping in mind the Cohan principle, we have taken the total deposits and undeposited checks for the year 1951 as representative of only five months of the year, and have annualized the total as a basis for giving comparable treatment to 1951. We have then taken 25 per cent of said annualized figure and reduced it by the amount of gross receipts disclosed on the return, the difference being the amount of income which we find was omitted from the return. It *141 would be idle, of course, to suggest that the result of our calculations is accurate. It does, however, give some relief from the harsh result which would attach if the presumption of correctness of respondent's determination were unleavened by application of the Cohan rule. At the same time, it requires petitioner to bear the consequences of his failure to keep records or furnish adequate explanations at the trial. In all events, we have been unable to devise an approach promising a more reasonable result on the record before us. IV. Partnership Loss Deduction On his 1950 return, petitioner deducted a partnership loss of $1,376.58, the nature of which was not disclosed. Respondent disallowed the loss, and his determination is prima facie correct. Petitioner offered no testimony in support of his position and presented no argument on the issues in his briefs. Respondent is, therefore, sustained. V. Additions to Tax Respondent determined additions to tax under sections 293(a), 294(d)(1)(A), and 294(d)(2). His determinations are presumed to be correct. Gibbs and Hudson, Inc., (1936), 35 B.T.A. 205; G. E. Fuller, (1953), 20 T.C. 308, 315, 316 (affd. C.A. 10), 213 Fed. (2d) 102. *142 With respect to the 5 per cent addition because of negligence or intentional disregard of rules and regulations under section 293(a), petitioner offered no evidence, and the issue was not argued on his briefs. Respondent is, therefore, sustained, the amount of the addition to be determined under Rule 50. With respect to the additions to tax for failure to file declaration of estimated tax under section 294(d)(1)(A) and substantial underestimate of estimated tax under section 294(d)(2), the parties stipulated as follows: "At no time did petitioner file a declaration of estimated tax for the years involved in this proceeding, nor did he pay any estimated tax." Petitioner offered no testimony to show that his failure to file a declaration of estimated tax was "due to reasonable cause and not to willful neglect." Again, the issue was not argued on the brief. We hold for respondent, the amount of the additiion to tax to be determined under Rule 50. In disposing of the question of additions to tax under section 294(d)(2) for substantial underestimate of estimated tax, we need merely say that the issue is disposed of by G. E. Fuller, supra, at page 316, and further *143 that petitioner presented no argument to the contrary on his briefs. Respondent is sustained, the amount of the addition to tax to be determined under Rule 50. Decision will be entered under Rule 50.