GAYLORD C. PETERS AND MARY E. PETERS, PETITIONERS *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2511–66. Filed October 31, 1968.

*Robert C. Strong*, for the petitioners.
*Lee A. Kamp*, for the respondent.

BRUCE, *Judge:* The respondent determined deficiencies in income tax and additions to tax under section 6653(a) of the Internal Revenue Code of 1954 for negligence or intentional disregard of rules and regulations, for the calendar years 1959 through 1964, as follows:

| Year | Deficiency | Addition to tax, sec. 6653(a), I.R.C. 1954 |
|---|---|---|
| 1959 | $1, 284. 00 | $64. 20 |
| 1960 | 1, 386. 48 | 69. 32 |
| 1961 | 1, 310. 61 | 65. 53 |
| 1962 | 1, 526. 31 | 76. 32 |
| 1963 | 1, 606. 19 | 80. 31 |
| 1964 | 676. 53 | 33. 83 |

The issues for decision are (1) whether the petitioners received taxable income in the taxable years which they failed to report, (2) whether respondent erred in disallowing deductions claimed for contributions, casualty losses, work tools, and medical expenses, (3) whether petitioners are liable for the additions to tax determined by respondent, and (4) whether the deficiencies determined for the years 1959 through 1961 are barred by the statute of limitations.

### FINDINGS OF FACT

The petitioners were residents of Seattle, Wash., at the time the petition herein was filed. They filed joint Federal income tax returns on the cash basis for the calendar years 1959 through 1964 with the district director of internal revenue at Tacoma, Wash.

Gaylord C. Peters was employed as a machinist by the Boeing Airplane Co. The petitioners' tax returns reported the following amounts of wages received from Boeing:

| Year | Amount | Year | Amount |
|---|---|---|---|
| 1959 | $6, 714. 45 | 1962 | $7, 646. 88 |
| 1960 | 6, 726. 13 | 1963 | 7, 168. 42 |
| 1961 | 7, 014. 84 | 1964 | 8, 573. 96 |

The petitioners reported no other income on their returns.

Kenneth L. Moran was a salesman for a real estate dealer in Seattle in 1957. In September 1957 the petitioners were looking for a home and were shown several prospective homes by Moran.

A few days later Mary Ellen Peters, herein sometimes referred to as the petitioner or as Mary Ellen, telephoned Moran at his office. She represented herself as Jeanne K. Gillette, and said she was a cousin of Mary Ellen Peters. On this occasion and in subsequent tele-

phone calls she identified Jeanne as a daughter of a Judge Leonard Gillette, of Minnesota. As Jeanne, petitioner telephoned Moran daily or oftener and aroused his interest. When he asked to see her, she said she was staying at Ranier Beach with an aunt and uncle who disapproved of Moran and that her uncle would shoot him if he came to see her. In later calls petitioner, as Jeanne, told Moran that she had cancer and needed money to pay for nurses and for treatments. Moran took a job as longshoreman in order to have a steady income and offered to give Jeanne a part of his wages to help pay her medical and nursing expenses. Petitioner, as Jeanne, told him to give the money to Mary Ellen for transmission to her. This was in about December of 1957 or January of 1958. Moran was told that the nurse cost $100 per week and occasional treatments by machine cost $40 each. He endeavored to furnish enough money to meet these expenses. He retained from his weekly earnings $10 for his mother and $20 for himself and turned over the remainder to Mary Ellen for delivery to Jeanne. Petitioner sent Moran pictures, purportedly of Jeanne, and small gifts. Moran bought a diamond engagement and wedding ring set at a cost of $300 and gave them to petitioner for delivery to Jeanne. On one occasion he borrowed $200 from a friend. During the telephone conversations petitioner, as Jeanne, suggested to Moran that he visit Mary Ellen and her daughters and go with them to various entertainments. Moran, at this suggestion, accompanied petitioner and her daughters to restaurants, movies, wrestling matches, hockey games, and occasionally to beaches. The petitioner's daughters ages were about 12, 9, and 7 in 1959 and 17, 14, and 12 in 1964. On these occasions petitioner gave Moran money to pay the bills. Petitioner sometimes had Moran come to the Peters' house for dinner and packed lunches for him. On some occasions petitioner bought clothes for Moran, and gave him money to buy a used car when his car broke down.

Moran turned over money to petitioner for delivery to Jeanne during 1959 and subsequent years until June of 1964.

In June 1964 Moran became suspicious and investigated. He discovered that there was no such person as Jeanne Gillette, and went to the police. He brought charges against Mary Ellen, who, on August 14, 1964, pleaded guilty to grand larceny committed during the period intervening between June 19, 1961, and June 12, 1964. On September 30, 1964, judgment and sentence was entered in the Superior Court of the State of Washington for the County of King, against Mary Ellen Peters adjudging her guilty of grand larceny and sentencing her to the penitentiary for not more than 15 years, with the sentence suspended on certain conditions including restitution.

Kenneth L. Moran filed individual Federal income tax returns for the calendar years 1959 through 1963 on September 8, 1964, and a return for 1964 on or about April 15, 1965. The returns for 1959 to 1963 state his occupation as longshoreman, employed by Waterfront Employers of Washington. The returns reported the following amounts:

| Year | Wages | Income tax withheld | FICA | State and sales tax | Loss by swindle | Tax refund claimed |
|---|---|---|---|---|---|---|
| 1959 | $8,519.53 | $1,407.14 | $120.00 | $42.00 | $5,432.39 | $909.21 |
| 1960 | 9,125.71 | 1,511.74 | 144.00 | 42.00 | 5,909.97 | 985.52 |
| 1961 | 8,679.23 | 1,440.30 | 144.00 | 42.00 | 5,534.93 | 929.79 |
| 1962 | 9,837.68 | 1,647.77 | 150.00 | 42.00 | 6,479.91 | 1,090.30 |
| 1963 | 10,595.94 | 1,781.62 | 174.00 | 42.00 | 7,080.32 | 1,189.42 |
| 1964 | 10,416.44 | 1,418.47 | (1) | 116.50 | 3,264.00 | 101.27 |

[1] Not shown.

On Moran's tax returns deductions were claimed as theft losses, or losses through swindle and false pretenses. Claims for refund were filed for 1961, 1962, and 1963.

The following computation shows the amounts transferred to Mary Ellen Peters by Moran for transmission to "Jeanne Gillette":

| | 1959 | 1960 | 1961 | 1962 | 1963 | 1964 [1] |
|---|---|---|---|---|---|---|
| Gross income | $8,519.53 | $9,125.71 | $8,679.23 | $9,837.68 | $10,595.94 | $4,493.37 |
| Income tax withheld | 1,407.14 | 1,511.74 | 1,440.30 | 1,647.77 | 1,781.62 | 768.54 |
| F.I.C.A. withheld | 120.00 | 144.00 | 144.00 | 150.00 | 174.00 | 75.07 |
| Health insurance withheld | 85.20 | 91.26 | 86.79 | 93.38 | 105.96 | 44.93 |
| Less $30 a week [2] | 1,530.00 | 1,530.00 | 1,530.00 | 1,530.00 | 1,530.00 | 660.00 |
| Amount given to Mary Ellen Peters | 5,377.19 | 5,848.71 | 5,478.14 | 6,416.53 | 7,004.36 | 2,944.83 |

[1] Payments stopped the first week of June 1964; therefore the 1964 figures are based on 22/51 of the year's salary and deductions.
[2] These figures are based on 51 weeks a year as Moran usually took 1 week vacation each year.

The respondent disallowed the following amounts which were among the deductions claimed on the petitioners' income tax returns:

| Year | Contributions | Casualty loss | Work tools |
|---|---|---|---|
| 1959 | $275 | $50 | $125 |
| 1960 | 275 | 17 | 125 |
| 1961 | 275 | 65 | 125 |
| 1962 | | 175 | 75 |
| 1963 | 25 | 50 | |
| 1964 | 25 | 75 | |

The petitioners have not substantiated these deductions.

Petitioners claimed deductions for medical expenses in the following amounts:

| Year | Amount | Year | Amount |
|---|---|---|---|
| 1959 | $667.40 | 1962 | $760.06 |
| 1960 | 379.91 | 1963 | 232.37 |
| 1961 | 604.86 | 1964 | 369.94 |

Petitioners omitted from the gross income reported on their returns for 1959 through 1961 amounts properly includable therein which in each year were in excess of 25 percent of the gross income stated in the return.

At least a part of the deficiency in each year was due to negligence or intentional disregard of rules and regulations.

The statutory notice of deficiency was mailed on March 14, 1966.

### OPINION

Petitioners contend that the statute of limitations bars the deficiencies determined for 1959, 1960, and 1961. The notice of deficiency was mailed more than 3 years but less than 6 years after the returns for these taxable years were due to be filed. Under section 6501, I.R.C. 1954, ordinarily the respondent must mail the notice within 3 years after the due date of a timely filed return. Section 6501(e) provides an exception where a taxpayer omits from gross income an amount properly includable therein which is in excess of 25 percent of the amount of gross income stated in the return. In such cases the respondent has 6 years in which to determine a deficiency. Respondent alleges that this provision is applicable.

The amounts of gross income reported for 1959, 1960, and 1961 were, respectively, $6,714.45, $6,726.13, and $7,014.84. The burden is upon the respondent to establish that petitioners omitted income in each year in excess of 25 percent of these amounts. *C. A. Reis*, 1 T.C. 9 (1942), affd. 142 F. 2d 900 (C.A. 6, 1944). As appears from the findings of fact herein, the money which petitioner Mary Ellen Peters received from Moran was considerably in excess of 25 percent of the amounts stated above for each of these years. Accordingly, if these receipts represented taxable income to petitioners, the deficiency notice is timely as to these years.

Respondent determined that the petitioners realized income from illegal gain which they failed to report on their income tax returns. This was money which Moran turned over to the petitioner Mary Ellen in the belief that she would deliver it to "Jeanne" to assist in paying the latter's medical and hospital expenses. The petitioner retained this money and spent it as she pleased. Moran was the victim of a confidence game in which the petitioner persuaded him to make these generous contributions of most of his earnings for the benefit of a nonexistent person.

The respondent cites *Rutkin* v. *United States*, 343 U.S. 130 (1952), holding that money extorted by means of threats is taxable income to the extortioner, and *James* v. *United States*, 366 U.S. 213 (1961), holding that embezzled funds are taxable income to the embezzler. Under

the rationale of these cases the money Mary Ellen received from Moran through larceny by false pretenses constitutes taxable income. When petitioner acquired this money without a consensual recognition, express or implied, of an obligation to repay and without restriction as to its disposition, she has received income and is required to report it, even though it may still be claimed that she is not entitled to retain it and may still be adjudged liable to restore its equivalent. *North American Oil* v. *Burnet*, 286 U.S. 417 (1932).

Petitioners contend that Moran made gifts of his money and, as gifts, it is not taxable income to Mary Ellen, the recipient. They cite *Commissioner* v. *Duberstein*, 363 U.S. 278 (1960), in which the Court said that the most critical consideration in determining whether a transfer is a gift is the intention of the transferor. Petitioners say that Moran intended these transfers as gifts.

The flaw in this argument is that while Moran may have intended to give, or loan, this money to Jeanne, whom he had not met, he had no intention to make gifts to Mary Ellen. This is indisputably proven by the fact that once he discovered the deception he had her arrested and brought criminal charges against her. Nor did the petitioner at that time claim that the money she had received represented gifts to her. Such a claim, if established, would have been a complete defense against the charge of grand larceny. She entered a plea of guilty, thereby admitting that this money was not received as gifts to her. There is no merit in petitioners' argument.

Petitioner on brief suggests that since some of this money was spent on trips, entertainments, and meals in which Moran was a participant, the money, or some of it, was not retained by petitioner but was in effect returned to Moran and therefore was not income to petitioner. The evidence is clear that petitioner exercised complete control over the money and that Moran never knew that the expenses paid for him by the petitioner were paid from his contributions. Nor has petitioner shown how much of these funds was used for Moran's benefit. Whatever part of this income was so used was paid at petitioner's discretion and not, so far as Moran was aware, as a refund of his own money.

The petitioners contend that the illegal gain is not taxable to the community and that Gaylord C. Peters is not liable for the deficiencies. They filed joint Federal income tax returns for all the years here involved, and pursuant to section 6013(d)(3)[1] their liability with re-

[1] SEC. 6013. JOINT RETURNS OF INCOME TAX BY HUSBAND AND WIFE.

(d) DEFINITIONS.—For purposes of this section—

\* \* \* \* \* \* \*

(3) if a joint return is made, the tax shall be computed on the aggregate income and the liability with respect to the tax shall be joint and several.

spect to the tax for each of such years is joint and several. The entire liability may be assessed against and collected from either spouse. Cases cited by petitioners holding that under the State law the community is not liable for the embezzlement or tortious acts of one spouse are not applicable here. Under Federal law each spouse is liable for the tax and the additions to tax here redetermined. *Myrna S. Howell*, 10 T.C. 859 (1948), affd. 175 F. 2d 240 (C.A. 6, 1949); *Dora S. Hughes*, 26 T.C. 23 (1956). It is immaterial whether or not Gaylord C. Peters had any knowledge of what Mary Ellen was doing.

Respondent determined additions to tax under section 6653(a) [2] for negligence or intentional disregard of rules and regulations. The burden of proof is upon the petitioners to show error in this determination. *David Courtney*, 28 T.C. 658 (1957); *Gibbs & Hudson, Inc.*, 35 B.T.A. 205 (1936). The petitioners have failed to explain the omission to report large amounts of income received in the taxable years. We have found that at least a part of the deficiency in each year was due to negligence or intentional disregard of rules and regulations.

The petitioners claimed deductions for contributions and casualty losses for each year, and for work tools for 1959, 1960, 1961, and 1962. Respondent disallowed some of these for lack of substantiation. Although alleged in the petition as error, the petitioners have offered no evidence in support of their claims, nor have they referred to these items on brief. The burden of proof is upon petitioners to establish that these amounts are deductible. They have not met this burden. The respondent's disallowance must be sustained.

The petitioners claimed deductions for medical expenses in each year. Respondent reduced the allowable amount of such deductions due to the increase in the petitioners' adjusted gross income resulting from the inclusion of illegal gain in each of the years at issue. These adjustments follow when the increase in income is sustained.

The deficiency notice computed the additional income to the petitioners upon the basis of the figures shown on Moran's income tax returns. The respondent, on brief, submits a revision of those figures which is somewhat more favorable to the petitioners. We hold that the petitioners received additional income as shown in these revised figures. A recomputation under Rule 50 will be necessary.

*Decision will be entered under Rule 50.*

---

[2] SEC. 6653. FAILURE TO PAY TAX.

(a) NEGLIGENCE OR INTENTIONAL DISREGARD OF RULES AND REGULATIONS WITH RESPECT TO INCOME OR GIFT TAXES.—If any part of any underpayment (as defined in subsection (c)(1)) of any tax imposed by subtitle A or by chapter 12 of subtitle B (relating to income taxes and gift taxes) is due to negligence or intentional disregard of rules and regulations (but without intent to defraud), there shall be added to the tax an amount equal to 5 percent of the underpayment.