Arthur William Peterson and Dorothy E. Peterson v. Commissioner.Peterson v. CommissionerDocket No. 885-67.United States Tax CourtT.C. Memo 1970-181; 1970 Tax Ct. Memo LEXIS 180; 29 T.C.M. (CCH) 802; T.C.M. (RIA) 70181; June 29, 1970, Filed George Constable, Seattle First Nat'l Bank Bldg., Seattle, Wash., for the petitioners. Millard D. Lesch, for the respondent. FORRESTERMemorandum Findings of Fact and Opinion FORRESTER, Judge: Respondent has determined deficiencies in petitioners' income tax for the years 1962, 1963 and 1964, in the amounts of $3,445.41, $157.50, and $7,020.84, respectively. Respondent also has determined a penalty tax for each year under section 6653(a) 1 of the Internal Revenue Code of 1954 in the amount of $172.27, $7.88, and $351.04, respectively. Concessions having been made by the parties, the remaining issues are: (1) Whether petitioners were engaged either in the business of logging or grass farming, or both, on their property located at Stehekin, Washington, and are therefore entitled to a business expense deduction under section 162 for expenses that are properly substantiated as relating to either or both operations. (2) In the years 1963 and 1964, whether any expenses attributable to the operation of the above-mentioned property that*182 are held not to be deductible as a business expense under section 162 are deductible under section 182 as "land clearing expenses"; and if so, whether petitioners have properly elected to take a deduction for those expenses pursuant to the election provisions of section 182. (3) Whether petitioners have substantiated the amount of certain expenses, incurred in the operation of their apple orchard business at Manson, Washington, as deductible business expenses under section 162. (4) Whether petitioners are entitled to a depreciation deduction under section 167 for buildings and other assets utilized in the operation of their Stehekin, Washington, property. (5) Whether petitioners are entitled to depreciation deductions under section 167 for certain buildings utilized in the operation of their apple orchard business at 803 Manson, Washington, and for the apple trees. (6) Whether petitioners were negligent (section 6653(a)) in computing their income tax for 1962, 1963, and 1964 and therefore subject to a penalty tax. General Findings of Fact Applicable to All Issues Some of the facts have been stipulated and are so found. The stipulations and exhibits attached thereto*183 are incorporated herein by this reference. Petitioners are Arthur W. Peterson (hereinafter sometimes referred to as Arthur) and his wife, Dorothy E. Peterson (hereinafter sometimes referred to as Dorothy), both presently residing at Manson, Washington. Their joint income tax returns were filed for the calendar years 1962, 1963, and 1964 with the district director of internal revenue at Tacoma, Washington. Petitioners are cash basis taxpayers. During the years in issue, petitioners owned and operated a commercial apple orchard at Manson, Washington, that had produced its first commercial crop in 1945. The orchard consisted of two separate parcels of land, totaling 35 acres, with 48 trees per acre. Also located on the property are six buildings which are used in connection with the orchard operation. These include four buildings that house employees, a community building used for bathing, laundry and storage, and a large workshop building. The operation of the orchard is a yearround affair, requiring the permanent employment of five people and the hiring of at least twelve additional men during the harvest season, which extends from about September 25 to November 1 of each year. *184 During the years in issue the laborers received hourly wages and, in addition, were provided with living quarters, electric power, and firewood as further compensation. Both Arthur and his son, Dale Peterson (hereinafter sometimes referred to as Dale), managed the orchard. Dale was almost entirely in charge of the orchard business and paid most of its expenses during the spring, summer and fall of each year, when Arthur was away managing the operation of his other property at Stehekin, Washington. In addition, part of the business expenses of the orchard each year was paid by the Lake Chelan Fruit Growers Association, a co-operative organization which sold petitioners' apple crop. During the years in issue petitioners received the following income, actually or constructively, from their orchard operation: Calendar YearAmount1962$45,522.77196365,745.72196447,392.53In 1962, 1963, and 1964, respectively, $17,019.24, $13,421.71, and $16,336.54 in orchard expenses were paid by Dale and $11,930.55, $26,731.73, and $21,745.35 in orchard expenses were paid by the Lake Chelan Fruit Growers Association. Respondent now agrees that those amounts are fully*185 deductible business expenses of the orchard for the years in issue. As noted above, during significant periods of the years in issue Arthur was not present at the orchard. At such times he was at petitioners' property at Stehekin, Washington, a 110 acre tract of land which was purchased in 1943 for $3,700. The property is approximately 45 miles from Manson, at the northwest end of Lake Chelan, borders on the Stehekin River, and is accessible only by boat or airplane. When the property was purchased, all but eight to ten acres were covered with timber. Arthur began cutting the timber in 1945 and continued to do so up to and including the years in issue. In 1945 Arthur also began construction of a sawmill on the Stehekin property that commenced operation in 1947 but was not entirely completed till 1948. Electricity for the operation of the mill and for other electrical needs at Stehekin was supplied by a hydroelectric generating plant. During the years in issue, the plant consisted of two hydroelectric generators (one installed in 1945 and the other in 1955), and the attendant foundations, footings and water transmission facilities. When the timber was cut, it was either processed*186 into lumber in the sawmill and sold, or stored on the property for future processing. Timber was cut during the years in issue, but none was processed at the sawmill because of a lack of available power from the generating plant. The reason for this was that Arthur had entered into a contract with the local public utility district of Stehekin allowing the district to use the generating plant to supply electricity for the area in 1962 and 1963. Though the contract provided that Arthur was to receive power for the Stehekin property during these two years, the district refused to make it available. A dispute over the contract continued into 1964 which 804 prevented the supply of electricity to the mill in that year. Despite his inability to process the timber, Arthur continued to cut and store it during this period with the intention to resume the mill operation as soon as the electric power was restored. Approximately 200,000 board feet of timber was cut during this period when the mill was not in operation. During the years in issue and prior thereto, tree stumps were blasted and removed from the soil; the holes filled in with soil from the surrounding area and grass seed planted*187 at the Stehekin property. Arthur's primary purpose for planting the grass seed was to enrich the soil. He also intended to produce and market both bluegrass seed and the stalks of bluegrass as hay, however, he never sold any hay because the grass crop was too dense for his mowing equipment. He did not sell any grass seed because its weed seed content had not yet been reduced to a level which met the requirements for sale of Washington State's Agricultural Department. Other than timber cutting and clearing and grass planting, the only activities carried on at Stehekin during the years in issue were river protection work to prevent erosion and flooding of the land which consisted primarily of diversion of water routes; brush burning to comply with forestry regulations; mowing grass and "repairing" equipment. By the time of trial herein, 60 acres of the Stehekin property had been cleared, and about 50 acres were planted in bluegrass. The cleared land, however, is not sufficiently extensive to justify the costs of a farming operator, which is Arthur's intent once sufficient land has been cleared. An underground sprinkler system is installed on the entire acreage, installation of which*188 occurred prior to the years in issue, though some minor finishing work was done in 1962. Also located on the Stehekin property are two powerhouse buildings which house the hydro-electric generators, a planer building and a brick house. The buildings were built after 1946 and are presently used in connection with the logging and other activities. Among the equipment utilized at Stehekin is a sea mule barge which was purchased in either 1947 or 1948, and a flail mower, purchased on May 16, 1963, for $318.80. From November 20 to April 15 for each of the years in issue, no employees work at the Stehekin property other than a caretaker, Mike Carragher (hereinafter sometimes referred to as Mike), because of the deep snows which make operations at the property impossible. Arthur usually leaves for Stehekin about April 15 and returns around November 20, though he does make some trips to Manson in this period. In their income tax returns for 1962, 1963, and 1964, petitioners deducted various expenditures as expenses of their "business" at Stehekin and Manson without segregating the expenditures at either place. At trial, they sought to prove the amount of their expenditures, the allocation*189 between Stehekin and Manson, and the relationship of the expenditures to various activities on their properties through their own testimony and the introduction of innumerable checks. Since the legal contentions with regard to the deductibility of these expenses involve the same issues under sections 162 and 182, we shall at the outset deal with them and thereafter present our findings of fact as to the amounts and allocations of specific expenses, as well as certain subsidiary legal issues which relate to specific expenses. Other major issues concerning claimed depreciation and the negligence penalty will be treated subsequent thereto. Issue 1. Deductibility of Expenses at Stehekin and Manson Petitioners deducted numerous expenses relating to the operation of their properties at Stehekin and Manson, Washington. They argue that they were engaged in two businesses on the Stehekin property during the years in issue, that of logging and sawmilling (hereinafter sometimes referred to as logging) and grass seed farming (hereinafter sometimes referred to as grass farming); and that therefore, their expenses relating to such activities are deductible business expenses under section 162(a). *190 2 Moreover, petitioners contend that any Stehekin expenditures which are not deductible as business expenditures are 805 capital expenditures for clearing the land to farm and deductible for the years 1963 and 1964 under section 182. 3*191 Respondent, on the other hand, argues that all expenses relating to the Stehekin property are nondeductible personal expenditures because petitioners were not engaged in any trade or business there. Alternatively, respondent contends that the expenditures were nondeductible capital expenditures. Moreover, respondent argues that the expenditures are not deductible under section 182 in 1963 and 1964 because petitioners have not properly elected to take advantage of that section's provisions, under section 1.182-6, Income Tax Regs., 4 and because they were not "engaged in the business of farming" under that section's provisions. *192 A. Deductibility of Expenses under Section 162A taxpayer may be engaged in more than one business simultaneously. M. A. Paul, 806 18 T.C. 601 (1952); John E. Good, 16 T.C. 906 (1951). Petitioners, therefore, may have been engaged in both a logging and a grass farming business at Stehekin while, concededly, they were engaged in an apple farming business at Manson. For almost 20 years, petitioners were engaged in cutting timber and sawmilling the timber into lumber at Stehekin. They built a sawmill, employed laborers to cut and process timber and sold timber. During the years in issue, over 200,000 board feet of timber was cut. Though no timber was processed into lumber in 1962, 1963, or 1964, petitioners intended to process their timber and sell it as lumber as soon as they regained electric power to run their sawmill. We hold this activity, carried on for such an extensive length of time, is a trade or business and the expenses which are substantiated as relating thereto are deductible. To be sure, the expenses would not only produce a benefit from the*193 profits of the sale of timber, but also a long-term benefit in that the land became partially cleared for farming. But the latter benefit, which required many more steps before its fruition - namely, blasting of the stumps, enriching the soil, etc. - does not detract from the fact that petitioners were independently engaged in a trade or business and the expenses attributable thereto, paid in the operation of that business, were deductible. Since petitioners were cash basis taxpayers they are entitled to a deduction for those expenses substantiated as relating to logging in the years in which the expenses were paid. The activities, other than the logging, conducted on the Stehekin property, such as grass planting, stump blasting, brush clearing and river protection, are a different matter. We do not believe that petitioners' intent in engaging in these activities was to grass farm and reap a profit therefrom. Rather, the primary purpose was to replenish the soil in order to bring it into a productive capacity for the eventual operation of the property as a farm. No seed was ever sold, nor any attempt made to get approval for its sale from Washington State's Agricultural Department. *194 This aspect of the operation at Stehekin was not a trade or business but rather preparation of the land for future farming. The entire benefit from the expenditures in these activities is to accrue in the future when the property is farmed. As such these are capital expenditures. Cf. H. L. McBride, 23 T.C. 901 (1955); J.H. Sanford, 2 B.T.A. 181 (1925). Thus these expenditures are nondeductible unless some other provision of the Internal Revenue Code allows a deduction. B. Deductibility of Expenses under Section 182 Petitioners contend that any expenses in the years 1963 and 1964, which are not deductible under section 162, may be deducted pursuant to section 182. This section provides that a person who is engaged in the business of farming may elect to deduct land-clearing expenses, incurred for the purpose of making land suitable for use in farming, in the lesser amount of $5,000 or 25 percent of his taxable income from farming during the taxable year. Respondent contends first that petitioners were not engaged in a trade or business of farming at Stehekin*195 and, therefore, that section 182 is not applicable. However, section 182's requirement that the taxpayer must be engaged in the business of farming makes no indication that the farming operation must be part of or contiguous to the very property which is being prepared for farming, nor do the committee reports indicate that this is the case. (Cf. S. Rept. No. 1881, 1962-3 C.B. 703,832-833.) In the absence of any contrary language in the statute or the legislative history, we give the ordinary meaning to this requirement, and construe the section's provision that the taxpayer be engaged in farming to mean that he may be so engaged on any property. Petitioners also meet the requirement that their purpose be to make the land suitable for farming. Their intent was to farm once a sufficient acreage on the land was clear. Their preparation activity was to enrich soil, clear brush and otherwise put the land in a suitable condition so that it could be farmed. While it is true that they were engaging in their activity over an extended period of time, the section places no time limit within which the property must be ready for farming. Finally, it is clear that many of the*196 expenses, such as stump blasting, grass planting, and river protection, are "land clearing" expenses. We think it unnecessary to consider this point in detail at this time. We merely quote the applicable regulation which defines this term to show that many 807 of the petitioners' activities fall within its terms. Sec. 1.182-3 Definition, exceptions, etc., relating to deductible expenditures. (a) "Clearing of land." (1) For purposes of section 182, the term "clearing of land" includes (but is not limited to) - (i) The removal of rocks, stones, trees, stumps, brush or other natural impediments to the use of the land in farming through blasting, cutting, burning, bulldozing, plowing, or in any other way; (ii) The treatment or moving of earth, including the construction, repair or removal of nondepreciable earthen structures, such as dikes or levies, if the purpose of such treatment or moving of earth is to protect, level, contour, terrace, or condition the land so as to permit its use as farming land; and (iii) The diversion of streams and watercourses, including the construction*197 of nondepreciable drainage facilities, provided that the purpose is to remove or divert water from the land so as to make it available for use in farming. * * * (b) Expenditures not allowed as a deduction under section 182. (1) Section 182 applies only to expenditures for nondepreciable items. Accordingly, a taxpayer may not deduct expenditures for the purchase, construction, installation, or improvement of structures, appliances, or facilities which are of a character which is subject to the allowance for depreciation under section 167 and the regulations thereunder. Expenditures in respect of such depreciable property include those for materials, supplies, wages, fuel, freight, and the moving of earth, paid or incurred with respect to tanks, reservoirs, pipes, conduits, canals, dams, wells, or pumps constructed of masonry, concrete, tile, metal, wood, or other nonearthen material. The deductibility of these expenses depends on the election requirements of section 182. Respondent contends that section 1.182-6, Income Tax Regs., adopted on January 25, 1965, has retroactive effect for 1963 and since petitioners did not elect according to its terms in*198 their 1963 income tax returns, they are not entitled to the deduction in that year. As for 1964, respondent also contends that noncompliance with the provision of this regulation precludes qualification for that year. Petitioners argue that for 1963 no election according to this regulation was required because the regulation was not promulgated until after the income tax return filing deadline for that year had passed. As we construe this argument, petitioners seem to contend (1) that in 1963 they may elect to take advantage of section 182 by merely returning the expense, and (2) that the regulation should be construed to be prospective only. As for 1964, petitioners point out that the government pamphlet, "Federal Income Tax Forms for 1964" states on its last page (unnumbered): INSTRUCTIONS FOR SCHEDULE F (FORM 1040)-1964 * * * EXPENSES AND OTHER DEDUCTIONS * * * Other farm expenses - * * * You may deduct expenditures in clearing land to make it suitable for farming. This deduction is limited to 25% of taxable income from farming, or $5,000 whichever is lesser. Petitioners contend that they should not be precluded from taking the deduction for 1964 because this form affirmatively*199 mislead them into believing that no set form of election was required. According to section 7805(b): SEC. 7805 * * * (b) Retroactivity of Regulations or Rulings. - The Secretary or his delegate may prescrible the extent, if any, to which any ruling or regulation, relating to the internal revenue laws, shall be applied without retroactive effect. Respondent argues that by virtue of the above-quoted section, all regulations are retroactive unless prescribed by the Commissioner to be otherwise and hence section 1.182-6, Income Tax Regs., must be given retroactive effect. We think that section 1.182-6, Income Tax Regs., while not explicity stated to be prospective, is implicitly so in application. The regulation states that the manner of election must be made by means of a statement filed "not later than the time prescribed by law for filing the income tax return (including extensions thereof) for the taxable year for which the election is to apply." If this regulation is meant to have retroactive effect for the year 1963, it is tantamount*200 to requiring that a taxpayer have the foresight in preparing his 1963 returns to know and specifically follow a manner of election that the Commissioner would state almost a year later. An election could not be made after the filing deadline. In effect, to construe the regulations to be 808 retroactive would preclude any deduction in 1963 under section 182, because no taxpayer, except by the most improbable chance, would have elected in his 1963 returns in the manner prescribed by the regulation. We cannot give such an unreasonable interpretation to the regulation. We hold that this regulation was meant to apply only to taxable years after 1963, i.e., that its application is prospective only. In the absence of a regulation as to election under section 182 for the year 1963, we think that a taxpayer was entitled to take advantage of this provision by means of any reasonable manner of election. Petitioners, in this instance, merely took the deduction and did not state that they were taking advantage of section 182 or segregate expenses on their returns. Nevertheless, we think that this is sufficient for 1963. In the absence of any regulation, the term "election" denotes to us that*201 the taxpayer must make a choice and manifest that choice in some overt manner. By actually taking the deduction on the 1963 return, we hold that petitioners exhibited such a manifestation. Accordingly, petitioners are entitled to section 182 treatment for any expenses substantiated as clearing expenses in that year. Cf. James River Apartments, Inc., 54 T.C. 618(March 25, 1970). The question of election for 1964 poses an entirely different situation. The regulation was adopted before the deadline for filing a return for that year. Petitioners, in fact, did not file their return until April 9, almost three months after the promulgation of the regulation. We do not think the 1964 government pamphlet prescribing no particular manner of election for 1964 precludes the Commissioner from asserting that an election must be made according to this regulation. There was a ready means for petitioners to become aware of the new regulation by reference to its publication in the Federal Register. They must be held to know that the pamphlet "Federal Income Tax Forms" does not give the full details of the applicability of a particular deduction or section. For a full explanation the*202 sections and regulations must be referred to, as well as additions and modifications thereto which are published in the Federal Register. If statements made in the "Federal Income Tax Forms" publication were binding on the Commissioner from an estoppel standpoint (which is in essence what petitioners argue) and publication in the Federal Register of changes or additions were not sufficient, then after the publication of the pamphlet there would be no way for the Commissioner to change or add to his position unless he mailed an adequate, timely notice to every taxpayer in the country. This is untenable. We hold that the regulation applies to 1964 and since petitioners did not elect according to the regulation's provisions, no deduction under section 182 is allowed for that year. See Adler v. Commissioner, 330 F. 2d 91 (C.A. 9, 1964), affirming a Memorandum Opinion of this Court. At this point it is necessary to deal separately with the expenses in light of the foregoing holdings, in order to indicate the extent to which these expenses have been substantiated by petitioners as allowable and to present our findings of fact with respect thereto. In many instances we have*203 found a sufficient basis in the record to approximate the amounts under the rationale of Cohan v. Commissioner, 39 F. 2d 540, 544 (C.A. 2, 1930). It is also clear that any expense herein allocated to Manson is a deductible orchard expense under section 162(a), since concededly petitioners were engaged in a business there. Other subsidiary issues as to specific expenses will be treated under the heading for such expense. Labor Expenses 51. Harold Clapp Harold Clapp, a mechanic, worked at both Stehekin and the orchard during the periods from approximately April 15 to November 15, of the issue years, spending nearly equal amounts of time at both places. When at Stehekin, he principally felled timber. Petitioners paid him the following amounts for*204 his services at the orchard and at Stehekin: Date of CheckAmount5-11-62$100.006- 1-62100.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.007-10-62100.007-17-62100.00* 8-25-62$ 24.00* 9- 8-62100.00* 9-29-62100.00* 11-16-6250.005-15-63100.00* 6-25-63125.007- 8-6350.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.008-13-63150.00 * 8-27-6350.008-30-63100.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.00* 5-14-6425.00* 6- 4-6425.00* 6-20-6410.00* 6-30-64150.007- 3-6450.00* 7-23-6425.00* 8- 1-6420.00* 8- 7-6410.00* 8-10-6475.00* 8-10-6475.00* 9- 8-6425.009- 8-64100.00Harold Clapp also received a check, dated April 5, 1962, in the amount of $50, which was cashed at Stehekin and written at the time of the year in which no operations at Stehekin were under way. For the years 1962, 1963, and 1964, respectively, we find and hold that $360, $350, and $290 of the above listed labor expenses of Harold Clapp are orchard expenses, deductible under section 162. The remaining amounts are attributable to the Stehekin operation and of that allocation*205 $180 in 1962, $175 in 1963, and $140 in 1964 are logging expenses, deductible under section 162. Clapp was principally engaged in felling timber while at Stehekin. We further find that in 1963, the labor expense of Harold Clapp which is attributable to Stehekin and not deductible pursuant to section 162 as a logging expense, is an expense of clearing land and is deductible, when added to the other allowable land clearing expenses, to the extent permitted under section 182(b). 6We also find that the amount of the check written to Harold Clapp for $50, dated April 5, 1962, is a deductible orchard expense in 1962 under section 162, since it written at a time during which no work was being done at Stehekin. 2. J. W. Levick J. W. Levick worked at both Stehekin and the orchard during the periods from approximately April 15 to November 15, when Stehekin was actively in operation. He spent equal amounts of time at both places. The following payments were received by him for his services from petitioners at those times during*206 each year in which he may have worked either at the orchard or Stehekin: Date of CheckAmount5-21-62$ 50.00* 9-18-6425.00* 6- 6-62 50.00* 7-16-62 50.00** 5- 1-64 20.00* 5-14-64 25.005-22-64 50.00* 6- 4-64 25.006-23-64 25.00* 7- 1-64 20.00* 7- 6-64 25.00* 7- 6-64 75.00* 7-13-64 125.00* 8- 1-64 20.00* 8- 6-64 10.00* 8-13-64 100.008-28-64 100.00 For the years 1962 and 1964, respectively, we find and hold that $75 and $322.50 of the above labor expenses are orchard expenses, deductible under section 162. In both years the remaining amounts paid Levick are attributable to the Stehekin operation and of those amounts, $10 in 1962, and $30 in 1964 are logging expenses, deductible under section 162. 3. Bill Baker Bill Baker worked at both Stehekin and the orchard during the periods from approximately April 15 to November 15, when Stehekin was actively in operation. He was the orchard irrigator and worked at Stehekin mostly in the spring, helping in brush burning and river protection. *207 During 1962 and 1963, he received the following amounts for his services from petitioners: Date or Year of CheckAmount4-27-62$ 62.50* 7-28-6210.001963 (10 checks, 4-26-63 to * 9-26-63)305,00 (total)In the year 1962, we hold that the two checks to Bill Baker are for Stehekin labor. Most of his work at Stehekin was done in the early months after the Stehekin 810 operation commenced and these checks were written during such period. Petitioners' burden of proving that this expense was a fully deductible orchard expense has not been met. Bill Baker did river protection work and brush burning at Stehekin and there is no indication that he engaged in logging. Therefore, this expense is nondeductible in 1962. In 1963, we find and hold that the labor expenses of Bill Baker are all Stehekin expenses. We think it significant that not a single check was cashed other than at Stehekin. If any orchard labor costs were involved, the probability would be great that at least one check would have been cashed at a place other than Stehekin. Petitioners*208 have not carried their burden of substantiating this expense as a fully deductible orchard expense. They relate solely to the river protection and brush burning work of Bill Baker, two "land clearing" activities. As such, the expenses (in the amount of $305) are deductible under (and within the limitations of) section 182 since they were incurred in 1963. 4. Bill Burns Bill Burns worked at both Stehekin and the orchard during the same period when Stehekin was actively in operation. When at Stehekin he helped principally in river protection and also did some logging. During 1962 he received twenty checks, dated from May 15, 1962 to October 5, 1962, in the total amount of $570. All the checks were cashed at Stehekin Landing. We find and hold that the expenses for Bill Burns' labor in 1962 are attributable entirely to the Stehekin operation. Every check was cashed at Stehekin Landing. We cannot believe that if part of these checks was for orchard costs, all would have been cashed at Stehekin. We find and hold that $60 is attributable to 1962 logging and deductible under section 162. 5. Mike Carragher Petitioners paid the following amounts for the year-round labor performed*209 by the caretaker, Mike, who protected the Stehekin property from vandalism and also helped in river protection in the fall and brush burning in the spring: YearTotal1962 (23 checks, dated 2-13-62 to 12-16-62)$5501963 (24 checks, dated 1- 3-63 to 11-25-63)5001964 (25 checks, dated 4-14-64 to 12-19-64)400In 1964 additional compensation was received by Mike from petitioners in the form of their payment of his debt to Joel Finley in the amount of $12, and the purchase of clothes for him from Sears Roebuck & Company by a check to that company in the amount of $36.70. In 1962, 1963, and 1964, respectively, we hold that $55, $50, and $45, respectively, of Mike's labor expenses are attributable to the logging operation at Stehekin and hence deductible under section 162. He took care of buildings utilized in the logging operation and protected the land from vandalism, which would obviously include protection of cut timber, prevention of pirating of timber, and guarding of machinery utilized in the logging business. In 1962 and 1964, the remainder of his labor expense is nondeductible. In 1963, we find and hold that the remaining amount of $450 for Mike's*210 labor is a "land clearing" expense, deductible pursuant to section 182 and within its limitations. 6. I. E. Cottrell I. E. Cottrell, a laborer who worked solely at Stehekin, received the following amounts for his labor by check: Date of CheckAmount9- 2-63$50.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.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.00There is no indication in the record what sort of labor was done, other than the fact that it was not for "repair" of machinery. It may have been labor of the logging operation, deductible under section 162, or land clearing, deductible under section 182, since all the expense was incurred in 1963. Since the section 182 deduction is limited by section 182(b), an allocation of the entire amount to land clearing expenses will produce a deduction (unquestioned as to amount) to which petitioners are entitled. Accordingly, we hold that $110 is deductible as a land clearing expense under section 182. 7. Otis Sykes, Bob Zimmerman and Glen Clausen Otis Sykes, Bob Zimmerman and Glen Clausen worked solely at Stehekin. The expenses for their labor and the dates of the checks in payment thereof are as follows: NameDateAmountOtis Sykes4-26-63$ 75.00Bob Zimmerman4-24-63100.00Bob Zimmerman12-18-6450.00Glen Clausen5-29-6440.00*211 811 Arthur testified that their labor was for the "repair" of equipment at Stehekin. But this is not sufficiently definitive, for such "repair" may have extended the useful life of the equipment rather than merely kept it in normal operation. Nothing in the record furnishes facts from which we can ascertain whether this labor was a capital expenditure, or a deductible maintenance expense under established criteria. Petitioners have failed to meet their burden of proof to establish any part of this expense as a section 162 business expenditure of the logging operation, rather than a capital expenditure to equipment. Some of these expenses were incurred in 1963, namely those of Bob Zimmerman and Otis Sykes. Under section 182(d)(2) depreciation on equipment utilized in the land clearing operation is allowed in an amount which would be allowable under section 167, if the equipment were used in a trade or business. Petitioners make no contention that the "repair" expenses should be added to the bases of the equipment for purpose of depreciation under section 182's provisions and indeed, there are no facts in the record upon which we could make such a determination. Accordingly, *212 no deduction is allowed under section 182 in 1963. 8. Miscellaneous Labor Petitioners paid Gene West $6 by a check dated November 11, 1963, for "cleanup work." We hold this to be a "land clearing" expense deductible pursuant to section 182. Groceries 1. Fae's Grocery and Camp Stehekin Groceries for the laborers at Stehekin, as well as for Arthur, were purchased, in part, from Fae's Grocery. The total amount of checks in payment for these groceries and the applicable year in issue are as follows: YearTotal1962 (7 checks, dated 2-26-62 to 11-12-62)$1,586.771963 (10 checks, dated 2-15-63 to 12-7-63)1,486.931964 (9 checks, dated 1-9-64 to 12-10-64)1,093.47A check dated August 9, 1962, to Camp Stehekin in the amount of $15 also was for groceries for the laborers at Stehekin. Clearly the expense of meals, given to laborers while engaged in the logging operation, is deductible. As for Arthur's meal expenses, we also consider those deductible under section 162, insofar as attributable to his supervision of the logging operation. We have held that Arthur was engaged in the business of logging and, concededly, he also was engaged in apple-orchard*213 farming. We further hold that his principal place of business and his "home" for the purposes of section 162(a)(2) was Manson, Washington. He had a residence, received significant earnings of a permanent character from his orchard farm and resided with his family there. Expenses for meals of a person at his second place of business while away from a "home," which is his principal place of business, are deductible. Joseph H. Sherman, Jr., 16 T.C. 332 (1951). We hold that in 1962, 1963, and 1964, respectively, $160, $150, and $110 of the Fae's Grocery expenses are attributable to both the laborers' logging work and to Arthur's logging supervision and are allowable in each of these years as a section 162 business expense. Two dollars of the Camp Stehekin expense in 1962 is also allowed as a business expense. In the year 1963, $1,050 of the Fae's Grocery expense is deductible under section 182 as a land clearing expense to the extent allowable under section 182. Other than for logging, the activities of most of the laborers were all "land clearing" in nature, and Arthur's supervision related to this also. However, the expense of the work of Otis Sykes and Bob Zimmerman*214 has been held to be nondeductible in 1963 and any grocery expense that relates to them in that year is nondeductible under section 182. Taking this latter factor in consideration, we have arrived at the above figure. 2. Stehekin Landing and Curt Courtney Checks to Stehekin Landing were written by Arthur in each year in issue in the following total amounts: YearTotal1962 (7 checks, dated 7-10-62 to 11-30-62)$110.001963 (16 checks, dated 4-27-63 to 10-19-63)265.001964 (14 checks, dated 5-29-64 to 11-27-64) *250.00These checks paid for beer for the employees' Saturday night outings, money orders, miscellaneous Stehekin equipment that arrived C.O.D. and other groceries. Three checks for the same purposes as 812 those written to Stehekin Landing were written in 1962 to Curt Courtney in the total amount of $35 (dated June 8, 1962, July 8, 1962 and August 27, 1962). The expenditures incurred at Stehekin Landing were for various items - with the main part of the expenditure for beer for Stehekin laborers on Saturday night. We hold that*215 $6, $13, and $12 are attributable to beer and groceries relating to the logging operation in 1962, 1963, and 1964, respectively, and therefore deductible as a business expense. This was a form of compensation to the laborers. In 1963, we hold that $95 is a beer and grocery expenditure, deductible pursuant to section 182. Most of the laborers' activities, other than logging, were entirely "land clearing" in nature and therefore the grocery and beer expenditures for them were additional compensation for such activities in that year. As with the Fae's Grocery expense, we have taken into consideration that Otis Sykes' and Bob Zimmerman's groceries and beer are nondeductible. Of the expenditures at Stehekin Landing in each year for other items, i.e., equipment and money orders, we have no means of knowing the nature of these expenditures. These may have been capital or noncapital expenditures which may relate to either logging or land clearing. Petitioners have not met their burden to prove an allocable deduction and hence the remainder of the Stehekin Landing expense in each year is not deductible. The expense in 1962 for the items bought from Curt Courtney is deductible in the total*216 amount of $2, as a business expense under section 162. Travel Expense During the years in issue, petitioners paid Lake Chelan Boat Company, for the transportation of employees and Arthur, from the Manson orchard to the Stehekin property and back in the following amounts: YearTotal1962 (14 checks, dated 3-27-62 to 11-14-62)$149.981963 (9 checks, dated 4-18-63 to 11-18-63)189.001964 (7 checks, dated 4-27-64 to 12-15-64)157.50A check written to Bill Baker, a laborer, in the amount of $10, dated April 22, 1963, was for transportation to Stehekin in that year. In 1962, 1963, and 1964, we hold that $15, $20, and $17, respectively, of the travel expenditures to Stehekin Landing in each year are deductible as a business expense of logging under section 162(a). We attribute this amount as a travel expense to laborers engaged in logging and to Arthur's supervision of the logging activity. Arthur's portion is deductible as a "traveling expense" pursuant to section 162(a)(2). 7In 1963, of the remaining amount of the travel expense, *217 $140 is a deductible "land clearing expense" under section 182, Aside from logging, all work of both Peterson and his laborers relates to "land clearing," and travel expenses allocated to this portion would be deductible under section 182. However, the expense of the work of Otis Sykes and Bob Zimmerman has been held to be nondeductible in 1963. We have again considered this factor in our approximations. Stehekin Expenditures - Miscellaneous Various other expenses were incurred in the operation of the Stehekin property. These expenses, the "purpose" of their incurrence and the date of payment for them by check are listed in the following table: 813 * 0 TablePayeePurposeDateAmount1. Chelan Auto ElectricPurchase of Electrical7-16-62$23.35Parts for Equipment2. Chelan HardwareMiscellaneous Supplies6-4-6231.667-1-6369.193. Columbia TractorPurchase of Parts for2-26-62136.10Tractors and Other4-17-62 *195.21Equipment4. Department ofPayments for Irrigation12-28-6217.00Conservationand Drinking Water2-18-6421.5512-20-6417.005. Deputy Auditor ofPayment for License for5-4-629.00Chelan, WashingtonStehekin Jeep6. H. R. Spinner Co.Purchase of Blasting11-26-6222.88Powder and Caps8-10-64116.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.167. Oleson Motor SupplyExpenditures for Batteries7-1-6334.68and Electrical Parts10-10-6421.638. Ramsey & PittsPurchase of Parts for4-5-625.10Equipment and Welding Rods6-4-6224.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.9412-28-6248.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.458-12-636.6712-20-6423.219. Tilly Equipment Co.Parts for Tractor6-8-6413.5810. Valley Tractor &Expenditures for Parts8-12-63100.00Implement Co.for Equipment5-14-64218.6511. Vaughan's Seed Co.Purchase of Grass Seed4-16-62100.006-4-62100.006-23-62100.0011-13-62100.007-20-63100.005-14-64100.0012. Wells and WadePurchase of Rakes, Shovels7-18-6311.44or Similar Small Tools13. Wenatchee Oxygen ServicePayments for Welding Gas4-17-6210.35and Welding Rods6-11-62 **20.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.66*218 814 Of the expenditures set out in the Table, those which represent the expense for purchase of parts for equipment (numbers 1, 3, 7, 8, 9 and 10) are nondeductible in the years of purchase. We do not have any evidence in the record from which we may ascertain whether these parts prolonged the useful life of the equipment. As to the reason for nondeductibility under section 182 of any of these expenses which were incurred in 1963, see our discussion of the labor expenses of Otis Sykes, Bob Zimmerman and Glen Clausen. Our holdings with respect to the other items listed in the table are as follows: 1. Chelan Hardware The expenditure for miscellaneous supplies incurred at Chelan Hardware in 1962 and 1963 (Table, No. 2) is nondeductible. We have no evidence as to what sort of supplies they were or for what operations or whether they may be of a capital or noncapital expenditure. 2. Department of Conservation The expense for irrigation and drinking water (Table, No. 4) in 1962 and 1964 is nondeductible. A major portion of this expense is for irrigation type purposes*219 which is a nondeductible land clearing expense. 3. Deputy Auditor The expenditure for the jeep license in 1962 (Table, No. 5), is nondeductible. We do not know in which operation at Stehekin this jeep was utilized. Petitioners did not meet their burden of proof. 4. H. R. Spinner The expense incurred at H. R. Spinner Company in 1964 (Table, No. 6) is a nondeductible land clearing expense, since the blasting caps and powder were obviously utilized in stump removal. 5. Vaughan's Seed Co. The expense incurred at Vaughan's Seed Co. in 1962 and 1964 (Table, No. 11) for seeds is clearly nondeductible in these years as a land clearing expenditure. The 1963 expenditure is deductible pursuant to section 182. 6. Wells and Wade The expenditure incurred at Wells and Wade for small tools (Table, No. 12) in 1963 is deductible under section 182. Such small tools as hand shovels or the like are not capital expenditures. Cf. section 1.162-12, Income Tax Regs. These tools may have been utilized for logging, but we are assured that an allocation to "land clearing" will allow the deduction in no greater an amount than is permitted. See our similar discussion*220 under the labor expenses of I. E. Cottrell. 7. Wenatchee Oxygen The expense incurred at Wenatchee Oxygen (Table, No. 13) Service is nondeductible. We have no idea what the welding gas and rods were utilized for at Stehekin. These expenses may relate to the pipeline in which case it could be a capital expenditure, or it may relate to equipment utilized in logging or seeding and be a capital expenditure because it prolongs the equipment's life. Petitioners fail on their burden of proof. Manson and Stehekin Expenses 1. Webb Tractor Co. Petitioners wrote the following checks to Webb Tractor Company for parts and equipment for tractors that operated at both places in the amounts 8 and on dates as follows: DateAmount6- 4-62$ 45.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.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.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.3310-12-6445.0412-20-6474.35The expenses incurred at Webb Tractor Co. to the extent not already allowed are nondeductible. There is no evidence to ascertain whether these expenses were for 815 capital expenditures on, or noncapital repairs to equipment. *221 2. Peterson Freight Petitioners paid by a check, dated April 23, 1962, $112.89 to Peterson Freight for the repair of a chain saw used in either the orchard or in logging at Stehekin. Since there is no evidence to show whether this expense was for capital expenditures, or noncapital repairs to the saws, the expense is nondeductible. 3. Chelan Bank Interest payments on loans used for equipment purchases and other operational expenses at the orchard and Stehekin, were made to the Chelan Branch, Seattle-First National Bank, Chelan, Washington, on the following dates and in the following amounts: DateAmount6-22-62$241.116-27-63350.008- 4-64368.33The interest on the loans from the Chelan Bank is nondeductible. We have no information as to what these loans were used for, i.e., for equipment, payment of wages, etc. In the absence of such information, there is no way to allocate any amount of the deduction and accordingly, since petitioners have the burden of proof, the amount is disallowed as a business deduction. 9*222 4. FICA Two checks were written by petitioners to the Internal Revenue Service in the payment of FICA taxes on wages of employees working at both places in 1964, in the amounts of $49 and $581.03, dated May 16, 1964 and May 18, 1964, respectively. The payments for FICA taxes are deductible business expenses to the extent of $150 as relating to employment of laborers at Manson. Of the remaining amount, $50 is a deductible business expense as attributable to the labor of the workers at the Stehekin logging operation. Manson Expenses - Miscellaneous 1. P.U.D. Petitioners wrote checks to the Chelan County Public Utility District #1 on the following dates and in the following amounts: 10DateAmount6- 4-62$25.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.004- 5-6344.0010-12-6347.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.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.0010- 9-6444.00Fifty percent of these expenditures is claimed as a deductible business expense for the orchard. Of the remaining 50 percent, one-half is claimed*223 as a deductible business expense for utilization of petitioners' home as an office. As to the contention relating to the amount claimed as an office expense, petitioners' only evidence is the statement of Dorothy at trial that one-fourth of these expenses are allocable to use of their home as an office. There was no proof of any room specifically utilized as an office or any other indication of the extent to which the Manson farm was operated from the home. We find and hold that petitioners have not substantiated this percentage of the expense as a business deduction. Petitioners' claim to a 50-percent deduction of the Public Utility District's expenses as an orchard expense is based on the assertion that these checks went for electricity for the various buildings that housed their harvest crew, as well as for their home, and an estimate that during the slackest period of their orchard operations 50 percent of each electricity bill was attributable to their home. In light of the facts in the record, we consider a 50-percent allocation of this bill to the various other buildings at Manson justifiable and hold that the expenses, other than the October 9, 1964, check, are 50 percent*224 deductible. As for the check of October 9, 1964, Dorothy testified that this was purely a home electricity expense and, accordingly, it is not deductible as an orchard expense on this ground. L. E. Radley A check, dated November 27, 1963, was written to L. E. Radley in the amount of $121.64 for home insurance. Petitioners also claim this amount to be one-fourth deductible because the home was utilized as an office. For the same reasons as 816 given with regard to the Chelan Public Utility District expense, this is disallowed. Issue 2. Depreciation - Stehekin Assets Petitioners have claimed depreciation under section 16711 for four buildings on the Stehekin property, as well as for the sea mule barge, the hydro-electric generating plant, and the flail mower. *225 1. Buildings As to the four buildings - the two powerhouse enclosures, a planer building and a brick house - petitioners claim a bases for depreciation of $5,000 per building. This figure was arrived at by Arthur's estimate that the total cost of twelve buildings on both his operations at Stehekin and Manson was $60,000. He thereafter divided by twelve to reach $5,000 for each. We hold that such an approximation falls far short of the necessary amount of proof to substantiate a basis from which depreciation may be determined and accordingly no depreciation is allowed for these buildings in any of the three years. 2. Generating Plants The depreciation deduction for the two hydro-electric generating plants is also disallowed for lack of substantiation as to basis. Petitioners claim a total basis of $23,500, which was gained from various estimates and approximations of Arthur as to money expended at various states of developing the system as far back as the forties. Petitioners have not met their burden of proof. 3. Sea Mule Barge The depreciation for the sea mule barge is disallowed. Arthur could only testify that he bought it in 1947 or 1948 at army surplus for "approximately*226 three thousand some hundred." This falls far short of substantiating the figure. 4. Flail Mower The cost of the mower is substantiated; however, since it was not utilized in the logging operation but rather in land clearing operations, which do not constitute a trade or business, section 167 requirements are not met and accordingly the depreciation is disallowed. The issue of depreciation for 1963 under the provisions of section 182 has not been raised. Issue 3. Depreciation - Manson Petitioners claim a depreciation deduction under section 167 for the six buildings at Manson, based on a $5,000 cost basis. We disallow such depreciation for lack of substantiation, based on the same reasons enumerated concerning the disallowance of depreciation on their Stehekin buildings. Petitioners also claim a depreciation deduction of $1,050 for their apple acreage based on a cost of $1,000 per acre. It is established that it is customary to cut and replant an orchard after 30 years. The basis for the figure is derived from the following trial testimony of Dorothy: Q. Do you know approximately what that orchard cost to build? A. We undervalued it at a thousand dollars an acre but*227 that is what we placed it as. Q. What do you mean you placed it as? A. We considered it cost that much to produce it with my husband's hard work. Q. How much money did you spend to build it? A. A thousand dollars an acre. Aside from the fact that this figure may have been arrived at by a valuation of Arthur's labor, which clearly has no place in a computation of basis, the figure lacks sufficient substantiation. Petitioners have failed their burden, accordingly, we disallow the depreciation. Issue 4. Negligence Penalty Respondent contends for this penalty under section 6653(a)12 for each of the three years in issue. The burden is on the taxpayer. David Courtney, 28 T.C. 658 (1957); Gibbs & Hudson, Inc.35 B.T.A. 205 (1936). *228 817 Although farmers are not required to keep books and records prescribed for other businessmen, they are required "to keep such records as will enable the District Director to determine the correct amount of income subject to tax." Income Tax Regs., section 1.6001-1(b). Petitioners in the instant case did not keep records of their expenses, nor segregate them as between Manson and Stehekin, or between the various operations on the Stehekin property. While they claim that they were prudent in doing so because respondent had never challenged their expenditures, such an assertion carries little weight. If taxpayers were permitted to utilize this argument, respondent would be under a virtual obligation to check every return every year to assure himself that deductions which "on the surface" appear legitimate, are not. In any event, we think that a prudent farmer would keep records of some sort despite no challenge. Such failure to maintain records is negligence. Cf. Carroll F. Schroeder, 40 T.C. 30, 34 (1963); Joseph Marcello, Jr. 43 T.C. 168, 182 (1964).*229 Accordingly, we hold for respondent on this issue. Decision will be entered under Rule 50. Footnotes1. All references are to the Internal Revenue Code of 1954.↩2. SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General. - There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including - (1) a reasonable allowance for salaries or other compensation for personal services actually rendered; (2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business; and (3) rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity. ↩3. SEC. 182. EXPENDITURES BY FARMERS FOR CLEARING LAND. (a) In General. - A taxpayer engaged in the business of farming may elect to treat expenditures which are paid or incurred by him during the taxable year in the clearing of land for the purpose of making such land suitable for use in farming as expenses which are not chargeable to capital account. The expenditures so treas so treated shall be allowed as a deduction. (b) Limitation. - The amount deductible under subsection (a) for any taxable year shall not exceed whichever of the following amounts is the lesser: (1) $5,000,or (2) 25 percent of the taxable income derived from farming during the taxable year. For purposes of paragraph (2), the term "taxable income derived from farming" means the gross income derived from farming reduced by the deductions allowed by this chapter (other than by this section) which are attributable to the business of farming. (c) Definitions. - For purposes of subsection (a) - (1) The term "clearing of land" includes (but is not limited to) the eradication of trees, stumps, and brush, the treatment or moving of earth, and the diversion of streams and watercourses. (2) The term "land suitable for use in farming" means land which as a result of the activities described in paragraph (1) is suitable for use by the taxpayer or his tenant for the production of crops, fruits, or other agricultural products or for the sustenance of livestock. (d) Exceptions, etc. - (1) Exceptions. - The expenditures to which subsection (a) applies shall not include - (A) the purchase, construction, installation, or improvement of structures, appliances, or facilities which are of a character which is subject to the allowance for depreciation provided in section 167, or (B) any amount paid or incurred which is allowable as a deduction without regard to this section. (2) Certain Property Used in the Clearing of Land. - (A) Allowance for Depreciation. - The expenditures to which subsection (a) applies shall include a reasonable allowance for depreciation with respect to property of the taxpayer which is used in the clearing of land for the purpose of making such land suitable for use in farming and which, if used in a trade or business, would be property subject to the allowance for depreciation provided by section 167. (B) Treatment as Depreciation Deduction. - For purposes of this chapter, any expenditure described in subparagraph (A) shall, to the extent allowed as a deduction under subsection (a), be treated as an amount allowed under section 167 for exhaustion, wear and tear, or obsolescence of the property which is used in the clearing of land. (e) Election. - The election under subsection (a) for any taxable year shall be made within the time prescribed by law (including extensions thereof) for filing the return for such taxable year. Such election shall be made in such manner as the Secretary or his delegate may by regulations prescribe. Such election may not be revoked except with the consent of the Secretary or his delegate.↩4. Sec. 1.182-6 Election to deduct land clearing expenditures. (a) Manner of making election. The election to deduct expenditures for land clearing provided by section 182(a) shall be made by means of a statement attached to the taxpayer's income tax return for the taxable year for which such election is to apply. The statement shall include the name and address of the taxpayer, shall be signed by the taxpayer (or his duly authorized representative), and shall be filed not later than the time prescribed by law for filing the income tax return (including extensions thereof) for the taxable year for which the election is to apply. The statement shall also set forth the amount and description of the expenditures for land clearing claimed as a deduction under section 182, and shall include a computation of "taxable income derived from farming", if the amount of such income is not the same as the net income from farming shown on Schedule F of Form 1040, increased by the amount of the deduction claimed under section 182. (b) Scope of election. An election under section 182(a) shall apply only to the taxable year for which made. However, once made, an election applies to all expenditures described in § 1.182-3 paid or incurred during the taxable year, and is binding for such taxable year unless the district director consents to a revocation of such election. Requests for consent to revoke an election under section 182↩ shall be made by means of a letter to the district director for the district in which the taxpayer is required to file his return, setting forth the taxpayer's name, address and identification number, the year for which it is desired to revoke the election, and the reasons therefor. However, consent will not be granted where the only reason therefor is a change in tax consequences.5. In dealing with these labor expenses, we do not deem the fact that some checks were cashed at Stehekin to be probative as to whether that single check was for Stehekin work. It could have been a check written at Stehekin for orchard work of the laborer, for Stehekin work, or for both; or it could have been a check for orchard work, written at the orchard but cashed at Stehekin, etc. The possibilities are endless.↩*. Stars by a check or group of laborers' checks represent that such were cashed at Stehekin Landing.↩6. A computation will be necessary to ascertain the maximum amount of the land clearing deduction under section 182(b)↩. This can be done under Rule 50.*. Stars by a check or group of laborers' checks represent that such were cashed at Stehekin Landing. ↩**. Date of payment of check by bank.↩*. Stars by a check or group of laborers' checks represent that such were cashed at Stehekin Landing.↩*. One check in this group in the amount of $20 is undated but was paid by the bank on September 14, 1964.↩7. See our findings under the Fae's Grocery Expense with regard to the deductibility of Arthur's business expenses.↩*. The year is ascertained from date of payment of check by the bank. ↩**. Date of payment by bank.↩8. Half of these expenses have already been allowed by respondent as attributable to the orchard operation.↩9. These interest items are not claimed as deductions under sec. 163 since petitioners have been allowed the standard deduction in each year, and agree that such method is to their advantage.↩10. Questions as to whether several other checks payable to P.U.D. are deductible, in whole or in part, have been resolved by the parties so that only the checks listed are still in contention.↩11. SEC. 167. DEPRECIATION. (a) General Rule. - There shall be allowed as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence) - (1) of property used in the trade or business, or (2) of property held for the production of income.↩12. SEC. 6653. FAILURE TO PAY TAX. (a) Negligence or Intentional Disregard of Rules and Regulations With Respect to Income or Gift Taxes. - If any part of any underpayment (as defined in subsection (c)(1) of any tax imposed by subtitle A or by chapter 12 of subtitle B (relating to income taxes and gift taxes) is due to negligence or intentional disregard of rules and regulations (but without intent to defraud), there shall be added to the tax an amount equal to 5 percent of the underpayment.↩